*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0210p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

     *v.*

DAVID WILLIAM DENNY,
                  *Defendant-Appellant.*

No. 09-6029

————————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00264-001—William J. Haynes, Jr., District Judge.

Argued: March 3, 2011

Decided and Filed: August 10, 2011

Before: BATCHELDER, Chief Judge; COLE and GIBBONS, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** James Ryan Harvey, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Hilliard H. Hester, III, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Ronald C. Small, Anne-Marie Moyes, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Hilliard H. Hester, III, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

————————————

**OPINION**

————————————

JULIA SMITH GIBBONS, Circuit Judge. David Denny pled guilty to one count of uttering a counterfeited security, in violation of 18 U.S.C. § 513(a). He now appeals his sentence of sixty months' imprisonment on both procedural and substantive grounds. For the reasons explained below, we affirm his sentence.

I.

In late April 2005, Daniel Pate, a Tennessee resident, placed an advertisement in a local newspaper offering his Chevrolet Corvette for sale. Denny, using the fictitious name Tom Williams, contacted Pate and arranged a meeting in order to inspect the car. The two met on April 29, 2005, and after some time, Pate agreed to sell the car to Denny for $12,000. Denny produced a cashier's check for that amount and gave it to Pate as payment. When Pate sought to deposit the cashier's check, he discovered it was fraudulent. He then reported the theft of his vehicle to the local police. Law enforcement eventually identified Denny as being involved in this incident and a string of similar thefts in January 2007. Denny admitted to participating in an automobile theft ring and in the fraudulent buying and selling of twenty-five vehicles in five states.

After being indicted on three counts of uttering a counterfeited security in violation of 18 U.S.C. § 513(a), Denny agreed to plead guilty to one count of uttering a counterfeited security—that involved with the theft of the Corvette—in August 2008. As part of his plea, Denny also admitted to uttering two other counterfeit checks, one for $17,000 and the other for $10,500, in order to steal two cars. The presentence report ("PSR") assessed a total offense level of 13 and a criminal history category VI. The district court, however, eventually found that Denny's criminal history was overstated and reduced the criminal history to a category V; it also reassessed the total offense level and found it to be 12. With these adjustments, the sentencing guidelines recommended a sentence of 27 to 33 months' imprisonment.

At a sentencing hearing in August 2009, however, the district court ultimately imposed a sentence of 60 months' imprisonment. The court explained that it felt the Guidelines did not reflect the seriousness of the crime in this case. The court explained:

> The defendant took basically three people's cars. Cars . . . represent a great investment to people, as evidenced by the statement of Mr. Pate. And the circumstances of this offense are such that it was particularly damaging to the victims. And I don't think that, given the amounts involved and the way in which the subsequent sales were taking place, in which this defendant was a central figure, that the guideline sentence represents a reasonable sentence.

After the court notified Denny of the 60-month sentence, defense counsel objected on the grounds that the sentence constituted an upward departure for which the court had given counsel no notice. The district court responded, "As I understand case law, you no longer have to give advance notice of upward departure, because the guidelines are advisory." The government's attorney then interjected to propose that "this is a variance within the discretion [of] the Court under section 3553 as opposed to a departure"; the district court agreed, explaining its decision was "not a departure under the guidelines."

After the sentencing hearing, the district court filed a sealed, standard-form Statement of Reasons. In the Statement of Reasons, the district court reiterated that it "impose[d] the sentence above the guideline range because of the nature of the defendant's crime against the victims and the seriousness of that offense is not properly reflected in the guideline calculation. . . . The criminal activity and evidence here indicates the defendant's actions were particularly damaging to the victims." In filling out the section entitled "Departure," however, the report checked the box next to the statement "[t]he sentence departs above the guideline range for the following reasons." In the subsection entitled "Reason(s) for Departure," two boxes were checked: one beside "5K2.0 Aggravating or Mitigating Circumstances," and a second next to "5K2.5 Property Damage or Loss."

This appeal followed. Because Denny was charged with federal crimes, the district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court's review of a sentence is authorized under 18 U.S.C. § 3742. Additionally, we possess jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

II.

The first issue on appeal is whether the district court's imposition of a sentence higher than that recommended by the Sentencing Guidelines constituted a "departure" or a "variance." Because this is a question of law, we consider the issue *de novo*.

Under Rule 32(h) of the Federal Rules of Criminal Procedure, a district court must notify the defendant of an intention to depart from the Guidelines.[1] However, in *Irizarry v. United States*, the Supreme Court held that Rule 32(h)'s notice provision does not apply when the district court chooses to apply a "variance" from the Guidelines range based on the sentencing factors of 18 U.S.C. § 3553(a). 553 U.S. 708, 714–16 (2008). This court has explained the difference between a departure and variance:

> "Departure" is a term of art under the Guidelines and is distinct from "variance." A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. A "variance" refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

*United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) (per curiam) (citations omitted). Given the similarities between the two procedures, however, it behooves a district court to indicate clearly whether it is "departing" or "varying" when it elects to deviate from the sentencing guidelines. *See United States v. Stewart*, 628 F.3d 246, 259 (6th Cir. 2010) (noting a district court's "failure to distinguish between a departure and a variance might in some circumstances affect the sentence's procedural reasonableness").

This case presents two separate issues: (1) whether the district court expressed an intention to apply a variance during oral sentencing, and (2) what significance the Statement of Reasons plays in our review of this question. We address these two issues in turn.

---

[1] Rule 32(h) provides that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure." Fed. R. Crim. P. 32(h).

A.

Our examination begins with the proceedings during oral sentencing. *See United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008) (noting the "primacy of the oral sentence" when addressing discrepancies in the sentencing record).  In support of his argument that the district court departed from the Guidelines, Denny emphasizes that the district court repeatedly used the word "departure" during oral sentencing and never used the word "variance."  This court, however, has noted that "no specific magic words are necessary to render a sentence reasonable."  *United States v. Davis*, 458 F.3d 505, 507 (6th Cir. 2006).  The court's omission of the word "variance" is therefore not conclusive evidence in favor of Denny.

Moreover, the district court clarified its use of the word "departure" while still at the sentencing hearing; it noted that its decision was "not a departure under the guidelines."  This reference to a departure outside the Guidelines apparently makes use of older terminology used to describe a variance; though variance is perhaps the more common term today, deviations based on § 3553(a) factors have frequently been termed "non-Guideline departures." *See, e.g.*, *United States v. Bridgewater*, 606 F.3d 258, 261 n.1 (6th Cir. 2010) (using "non-Guideline departure" and "variance" interchangeably); *United States v. Curry*, 606 F.3d 323, 328 (6th Cir. 2010) (same); *United States v. Blackie*, 548 F.3d 395, 403 (6th Cir. 2008) ("We often refer to Non-Guideline departures as 'variances.'").  The court's clarification that the sentence was "not a departure under the guidelines," confirms that district court was acting pursuant to its discretion under § 3553(a).

The variance–departure question ultimately turns on whether the court's deviation from the sentencing guidelines was done pursuant to the factors enumerated in § 3553(a). Section 3553(a) provides that a court shall impose a sentence "sufficient, but not greater than necessary," to comport with the goals of criminal justice, and, to that end, the section enumerates factors for the court to consider during sentencing.  These factors include "the seriousness of the offense," the provision of "just punishment for the offense," the protection of the public, and the need to provide adequate restitution to the

victims.  18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(2)(C), 3553(a)(7).  This court has noted that these sentencing factors provide the district court with a "much broader range of discretionary decisionmaking" than the discretion provided by the Sentencing Guidelines.  *United States v. Stephens*, 549 F.3d 459, 466–67 (6th Cir. 2008).

In this case, the district court's central reason for deviating from the Sentencing Guideline was that it considered "the seriousness of that offense [to be] not properly reflected in the guideline calculation."  The seriousness of the offense is explicitly a § 3553(a) factor to be considered.  Moreover, the court's emphasis on the particularly vulnerable victims in this case—many of whom were retiring and were forced to dip into savings as a result of Denny's fraud—falls within § 3553(a)'s "just punishment" factor. In *United States v. Stewart*, this court determined that a district court's decision to vary a sentence because the crime "had such a severe impact on . . . [the] victims" was proper under § 3553(a) factors.  628 F.3d 246, 261 (6th Cir. 2010).

Based on the district court's clarifying language during oral arguments and its clear reference to § 3553(a) factors, the proceedings establish that the court's deviation constituted a variance, not a departure.

### B.

Denny also argues that this court should use the Statement of Reasons to clarify any residual ambiguity resulting from the oral proceeding.  The Statement of Reasons, according to Denny, clearly demonstrates that the district court  imposed an upward departure, as the report "made no mention of a variance, clearly characterized its sentence as an upward departure, and even cited to specific departure provisions under the Guidelines."

We have previously outlined the relationship between oral and written pronouncements of sentences.  "'[W]hen an oral sentence conflicts with the written sentence, the oral sentence controls.'"  *United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008) (quoting *United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir.1988)); *see also United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).  "The reason for the

primacy of the oral sentence lies in the fact that a defendant is present only when being sentenced from the bench. Because criminal punishment affects the most fundamental human rights sentencing should be conducted with the judge and defendant facing one another and not in secret." *Penson*, 526 F.3d at 334 (internal quotation marks, citations, and alterations omitted). Similarly, written documents cannot be used to create ambiguity in the sentence if the oral sentence is clear. *See id.*

At the same time, this court has accepted that certain written documents can be used to resolve an ambiguity in the oral sentence. In *United States v. Penson*, for instance, this court held that "[w]hen an orally pronounced sentence is ambiguous . . . the judgment and commitment order is evidence which may be used to determine the intended sentence." *Id.*; *see also United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir. 1988) ("Where there is ambiguity [in the oral sentence], however, courts have usually been able to divine the intent of the sentencing judge." (internal quotation marks omitted)). Yet the court has also recognized that often written judgments and commitment orders will have limited probative value if they are cursory accounts. In *United States v. Blackie*, for instance, this court found that a written "order [that] simply checked two boxes to indicate its reasons for sentencing outside the guideline system and left blank the section of the order for facts justifying the sentence" lacked "the requisite level of specificity" necessary to resolve ambiguities in the oral transcript. 548 F.3d 395, 401 (6th Cir. 2008).

The particular document to which Denny cites—the sealed Statement of Reasons—must be viewed with some caution. This reporting procedure is required under 28 U.S.C. § 994(w)(1)(b), which provides that

> [t]he Chief Judge of each district court shall ensure that, within 30 days following entry of judgment in every criminal case, the sentencing court submits to the [Sentencing] Commission, in a format approved and required by the Commission, a written report of the sentence, the offense for which it is imposed, the age, race, sex of the offender, and information regarding factors made relevant by the guidelines. The report shall also include . . . the written statement of reasons for the sentence imposed (which shall include the reason for any departure from the otherwise applicable guideline range and which shall be stated on the

written statement of reasons form issued by the Judicial Conference and approved by the United States Sentencing Commission).

28 U.S.C. § 994(w)(1) (2006).**2** Under § 994(w)(1), therefore, a district court is required to submit to the United States Sentencing Commission a written statement of reasons for every criminal sentence that it imposes.**3** This section, however, was not intended as a procedural safeguard for any particular defendant; rather, "[t]he ostensible purpose of § 994(w) is to make the courts report information about sentences and departures to ensure a measure of consistency in sentencing throughout the country." *United States v. Ray*, 273 F. Supp. 2d 1160, 1164 (D. Mont. 2003); *cf. Mistretta v. United States*, 488 U.S. 361, 369 (1989) (suggesting § 994(w) is designed to allow the Sentencing Commission to "submit to Congress at least annually an analysis of the operation of the guidelines").

Because it was merely intended to serve a record-keeping function, courts' written statement of reasons have not always been crafted with the same precision that judges heed during the oral sentence.**4** While we have nonetheless allowed parties to look to the written statement of reasons, *see, e.g.*, *United States v. Batista*, No. 10-3021,

---

**2**Section 994(w)(1) has been amended over the years. Initially, § 994(w) permitted the reporting to be fulfilled by either an "appropriate judge or officer." 28 U.S.C. § 994(w) (1984), *amended by* 117 Stat. 650, 672 (2003). In 2003, Congress amended the section to provide that "[t]he Chief Judge of each district" was responsible for ensuring that each "sentencing court" submit the required report. The Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act ("PROTECT Act"), P.L. 108-21, 117 Stat. 650, 672 (2003). The section was again amended in 2006, specifying that the statement of reasons should be "written" and "stated on the written statement of reasons form issued by the Judicial Conference and approved by the United States Sentencing Commission." P.L. 109-177, § 735(1)(B) (2006).

**3**In order to safeguard confidential information, the statement of reasons form is not available for public disclosure, but it is made available to defense counsel, government attorneys, and various government agencies and offices. *United States v. Batista*, No. 10-3021, 2011 WL 239867, at *6 (6th Cir. Jan. 27, 2011) (unpublished); *United States v. Espinoza*, 514 F.3d 209, 213 n.5 (2d Cir. 2008).

**4**It should be noted that the evolution of § 994(w) evinces a congressional intent to make the written statement of reasons a more formal document than it has been previously. Since 2003, for instance, the plain language of § 994(w) does not provide that a judicial officer other than the sentencing judge may prepare the statement of reasons. Similarly, a 2010 amendment to 18 U.S.C. § 3553 provides that the reasons given for a sentence during the court's statement in open court "must also be stated with specificity in a statement of reasons form issued under section 994(w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera." 18 U.S.C. § 3553(c)(2) (2010). We do not consider the impact, if any, of the amendment to § 3553(c)(1), since it was passed after Denny's sentencing. However, given Congress's integration of § 994(w) into other parts of the sentencing protocol, district courts would do well to pay greater care to future statements of reason.

2011 WL 239867, at *6 (6th Cir. Jan. 27, 2011) (unpublished), our unwillingness to allow certain written statements to obfuscate unambiguous reasoning given by a district court at the oral hearing is related to the fact that the written statement of reasons has a clerical, and not substantive, origin. Moreover, as we noted in *Blackie*, a cursory statement of reasons will not be sufficient to be of significant probative value. 548 F.3d at 401.

In this case, the district court checked two boxes on the prepared Statement of Reasons, both in the section entitled "Departure."[5] On the version of the form filled out by the district court, however, there is no corresponding section entitled "Variance" that the court could have checked, and nowhere on the standard form does it mention variance or § 3553.[6] It appears, therefore, that the "Departure" box was checked because it represented the best approximation of the court's substantive reasons for the sentence. And, aside from these two checked boxes, the written statement of reasons makes no other suggestion that the sentence constituted a departure under the guidelines. In the section permitting additional comments, the district court reiterated that it "impose[d] the sentence above the guideline range because of the nature of the defendant's crime" and that "the seriousness of that offense is not properly reflected in the guideline calculation." As noted above, the seriousness of the offense is explicitly a factor to be considered under § 3553(a).

Even if we concluded the record from the oral sentencing was ambiguous, therefore, we conclude that the written Statement of Reasons does not give rise to the inference that the district court departed under the Guidelines. The record makes clear that the court intended to vary from the Guidelines range.

---

[5]Section 994(w) requires that the statement of reasons be submitted "in a format approved and required by the Commission." 28 U.S.C. § 994(w)(1).

[6]The form used by the district court in this case was outdated at the time of its use in 2009. The current version of the Statement of Reasons form, revised in September 2008, now includes a section for variances imposed pursuant to 18 U.S.C. § 3553(a). The revised version of the form can be found at http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO245B.pdf.

III.

Alternatively, Denny argues that the 60-month sentence imposed by the district court was procedurally and substantively unreasonable.  This court reviews sentences for both procedural and substantive reasonableness under an abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

A.

Procedural unreasonableness may occur when a sentencing court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

Denny puts forward two claims with regard to procedural unreasonableness.  The first is that the district court "failed to adequately explain its sentencing decision."  The Supreme Court has held that a "sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has reasoned a basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).  However, this court has emphasized that a district court "need not recite" the § 3553 factors when it imposes a sentence. *United States v. Hernandez-Fierros*, 453 F.3d 309, 312 (6th Cir. 2006) (internal quotation marks omitted).  "[T]he crucial question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Wallace*, 597 F.3d 794, 804 (6th Cir. 2010) (internal quotation marks omitted).

The record clearly indicates that the sentencing judge took Denny's claims under consideration.  Indeed, the court found some of his arguments persuasive and adjusted both the offense level and Denny's criminal history according to objections made by Denny to the presentence report.  Similarly, the court articulated at both the sentencing

hearing and in its statement of reasons the factors that warranted a variance. The record therefore amply indicates the court's decisionmaking process, and Denny's claim that the court failed to adequately explain itself is incorrect.

Denny also argues that the court applied the incorrect standard in calculating his sentence. He claims that the district court committed error by "justif[ying] its sentence as 'reasonable' rather than 'sufficient, but not greater than necessary.'" Denny claims the court's statement that the "guideline sentence [does not] represent[] a reasonable sentence" evidences the application of the incorrect standard—specifically, the appellate standard of review.

In support of his second procedural claim, Denny cites to this court's opinion in *United States v. Wilms*, which explained that

> [a] district court's job is not to impose a "reasonable" sentence. Rather, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task.

495 F.3d 277, 281 (6th Cir. 2007) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)). But Denny omits the following sentence in *Wilms*, namely that "the mere fact that the district court utters the word 'reasonableness' or recognizes that we apply a presumption of reasonableness on appeal does not render its sentencing determination procedurally unreasonable." *Id.* Denny essentially asks this court to find exactly the opposite and hold that the sentencing judge's single reference to reasonableness renders the entire decision invalid. We do not accept this argument. The district court made it clear that its adjustment of Denny's sentence was done pursuant to the factors and standard set forth in § 3553(a), and this court does not require "ritual incantation" of § 3553 to affirm a sentence. *United States v. Simmons*, 587 F.3d 348, 398 n.14 (6th Cir. 2009). Therefore, we reject Denny's claims that the sentencing was procedurally unreasonable.

B.

"The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). A sentence is substantively unreasonable "if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 633 (internal quotation marks omitted). The court must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. If, as in this case, "the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

Denny makes two arguments about substantive unreasonableness. The first is that the district court improperly drew factual conclusions about cars and the particular vulnerability of victims defrauded of their vehicles. The district court did mention that in American society automobiles are "important" and "represent a great investment to people," but this aside during the hearing did not serve as the court's central reasoning. Its emphasis, in contrast, focused on (1) the broader automobile theft ring in which Denny played a central role and (2) the victims' suffering as a result of the theft. There was more than adequate evidence in the record to support both of the district court's points. By Denny's own admission, he was involved in the theft and illegal sale of twenty-five vehicles. Evidence offered by the victims described how they had been forced to dip into savings and delay retirement as a result of receiving the fraudulent checks. The evidence in the record, therefore, amply supports the conclusions drawn by the district court.

Denny's second argument is that the sentence imposed was excessive. In support of this claim, Denny claims that his sentence would have been significantly less had the

court imposed a vulnerable victim enhancement under U.S.S.G. § 3A1.1(b), rather than simply imposing a variance.

Denny's argument fails for two reasons. First, his argument confuses the susceptibility of a victim to a crime (which is taken into account under § 3A1.1(b)) with the effects of a crime on a victim. The district court considered the effects of Denny's frauds on the victims given their financial conditions and the substantial asset that a vehicle constitutes for the average American, not whether the victims were particularly susceptible because they were selling cars.[7] Therefore, Denny's analogy fails, given that § 3A1.1(b) accounts for an entirely different factor than that considered by the district court under § 3553(a). Second, Denny's argument incorrectly assumes that the district court's variance was based solely on consideration of the victims. The district court explicitly noted that the very nature of this crime—a robbery that was part of a large automobile theft ring—was of a kind different from that envisioned by the Sentencing Guidelines, making reliance on the Guidelines inappropriate. Therefore, § 3A1.1(b) is an improper metric because it does not account for all of the factors considered by the court pursuant to § 3553(a).

The sentence imposed, therefore, was both procedurally and substantively reasonable.

IV.

For the foregoing reasons, we affirm the sentence imposed by the district court.

---

[7]In contrast, this court found that chemotherapy patients were within the class of "vulnerable victims" under the guidelines' vulnerable victims enhancement, when the fraud being perpetrated involved the presentation of an ineffective treatment for cancer. *United States v. Moon*, 513 F.3d 527, 540–41 (6th Cir. 2008).