**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0062n.06

No. 13-5391

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | JAN 23, 2014 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MICHAEL DARDEN, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |

BEFORE:  ROGERS, McKEAGUE, and WHITE, Circuit Judges.


PER CURIAM.  Michael Darden appeals his sentence.  We affirm.

Darden pleaded guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  The district court determined that his base offense level was 20.  The court added two levels because the firearm had been stolen (§ 2K2.1(b)(4)(A)); added four levels because Darden possessed the firearm in connection with a felony drug offense (USSG § 2K2.1(b)(6)(B)); and subtracted two levels for acceptance of responsibility (§ 3E1.1(a)), resulting in a total offense level of 24.  Based on the total offense level of 24 and a criminal history category of V, Darden's guidelines range was 92 to 115 months of imprisonment.  The district court sentenced him to 92 months in prison, to be followed by two years of supervised release.

On appeal, Darden raises the following arguments:  (1) the government's refusal to move for an additional one-level decrease for acceptance of responsibility under USSG § 3E1.1(b) was

arbitrary; (2) the district court erred by requiring him to submit to unlimited drug testing during his term of supervised release; and (3) there is a discrepancy between the district court's oral sentence and the written judgment concerning whether his probation officer may require him to participate in drug treatment during his term of supervised release.

**Facts**

On January 12, 2011, officers with the Shelby County Sheriff's office sought to locate and arrest Brian Lackland on an outstanding warrant. During surveillance, Lackland was observed in a vehicle with Darden in the driver's seat. The vehicle was stopped, and officers smelled marijuana as they approached. As Darden exited the vehicle, officers observed a revolver wedged between the driver's seat and the center console and a marijuana cigarette in the driver's door pocket. A check revealed the gun had been reported stolen. Lackland and Darden were arrested, and the vehicle was searched. Officers recovered a gray skull cap on the passenger seat containing marijuana and narcotics. Agents asked Lackland if the cap was his, but before Lackland could respond, Darden stated that the gun and the drugs were his.

Darden was charged with being a felon in possession of a firearm and pleaded guilty to the charge. PID 2; Minute Entry, R 19. Darden's PSR included a four-level guideline enhancement under U.S.S.G. § 2K2.1(b)(6) for possessing a firearm in connection with a drug-trafficking offense. PSR, p. 4. Prior to his sentencing hearing, Darden submitted a Position Paper objecting to the accuracy of paragraph 5 of the PSR, which states: "Darden stated that the gun and the drugs were his." PID 51–52. Darden responds: "Mr. Darden accepts responsibility for the firearm but vehemently denies that the drugs located underneath the grey skull cap in the passenger seat were his. He further denies that he was drug trafficking." *Id*.

During the sentencing hearing, Darden objected to the four-level enhancement for possession of a fire arm in connection with a felony drug offense. PID 78. The government argued that Darden pled guilty to possessing the gun and the drugs at his plea hearing, but because he now knew he would receive a four-level increase, he was disavowing any connection with drugs. PID 91. The defense countered that Darden had always said the drugs were not his (PID 92), and Darden testified that he never made a statement that the drugs and the gun were his. PID 119. The government called three officers as witnesses who testified that Darden said during his arrest that the gun and the drugs were his. PID 85, 98, 112. Although the district court noted Darden was never asked about drugs during the change of plea hearing in which Darden pled guilty, the district court credited the officer's testimony and ruled that the government carried its burden of proving possession of a firearm in connection with drug trafficking. PID 132–33.

The government then asserted that Darden had not accepted responsibility, arguing that because Darden denied that he possessed the gun, he was denying information that comprised the offense in contravention of the sentencing guideline in § 1E1.3. PID 136–37. The defense countered that Darden had timely accepted responsibility for his conduct because he "always admitted the gun was his." *Id.* The district court granted Darden the two-level adjustment for acceptance of responsibility, reasoning that during the plea hearing, Darden was confronted with possession of the weapon, and he freely admitted to it. PID 138. The district court held that Darden was not entitled to the third level adjustment "in light of everything I've heard. In light of the position of the government." PID 138–39. Darden's Guideline's sentencing range was calculated to be a total offense level of twenty four. The district court asked if there were "any other objections to the Presentence Report, the facts, as well as the calculation." PID 140. There

were none.  *Id*.  The district court sentenced Darden to 92 months' imprisonment, followed by

two years of supervised release.  PID 153–54.  Following sentencing, the district court asked if

there was "anything else from probation?" and "anything else from [the defense]?"  PID 155.

Nothing further was raised.  *Id*.

The district court ordered that Darden participate in drug testing under the direction of the

probation office during his supervised release:

> Normally, I wouldn't do that in light of the fact that there is really nothing in the
> Presentence Report to indicate a problem with drugs.  The only two things that
> make me make that recommendation are, number one, the drugs found in the car.
> But number two, Mr. Darden is in a substance abuse group at the correctional
> center, so there must be some reason that he has in his mind for doing that.

PID 155.

However, when asked by defense counsel if he would recommend Darden for a 500-hour

drug program, the district court stated:

> I don't know that I have the basis for that . . . . I mean, there is no demonstration
> with the exception of just presently enrolled in substance abuse group,
> demonstration of any type of addiction or anything along those lines.

PID 156.  The district court further noted that if placed in the drug program, it would not be close

to home.  Defense counsel responded that Darden understood that, and explained that

"sometimes they can participate in the program just for the benefit of it . . . even though they

may not get any credit."  PID 157.

### Analysis

Darden first argues that he was entitled to a one-level decrease for acceptance of

responsibility under § 3E1.1(b) and that the government acted arbitrarily in declining to move for

the reduction.  Under the procedural rule set out in *United States v. Bostic*, the district court must

clearly ask the parties whether they have any objections to the sentence not previously raised

after pronouncing the sentence but before adjourning the sentencing hearing. *United States v. Bostic*, 371 F.3d 865, 872 (2004), *cert. denied*, 552 U.S. 965 (2007). Although the district court asked for objections following the guidelines calculation, it did not clearly ask whether the parties had any objections not previously raised after pronouncing the sentence. We therefore review the district court's sentencing determination under an abuse-of-discretion standard. *Id*; s*ee also United States v. Batti,* 631 F.3d 371, 379 n.2 (6th Cir. 2011); *United States v. Bey*, 384 F. App'x 486, 489 (6th Cir. 2010). A defendant may receive a one-level decrease under § 3E1.1(b) only where the government moves for such a reduction. *Id.* "[T]he one-level reduction in subsection (b) is permitted only if the government moves for it in a motion stating that "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. . . ." U.S. Sentencing Guidelines Manual § 3E1.1(b) (2011). The government's discretion to file the motion is subject only to the limitation that its refusal to do so cannot be based on a constitutionally impermissible factor and cannot be arbitrary. *United States v. Collins*, 683 F.3d 697, 704–05 (6th Cir.), *cert. denied*, 133 S. Ct. 571 (2012). This means that the prosecutor's decision must bear a rational relation to a legitimate government end and must not be based on factors such as religion, sex, or race. *Id.* (citing *United States v. Lapsins*, 570 F.3d 578, 769 (6th Cir. 2009)). The defendant must present "objective evidence of an improper motive or arbitrary action" to overcome the government's decision not to file a § 3E1.1(b) motion. *Id*.

The district court did not abuse its discretion in declining to reduce Darden's offense level under § 3E1.1(b). At sentencing, Darden contested the four-level increase under

§ 2K2.1(b)(6)(B) on the basis that he never admitted that the drugs found in his vehicle belonged to him. The government was required to present testimony to the contrary from three law enforcement officers. Given Darden's testimony and the testimony of the officers, it was reasonable for the government to assert that Darden had not fully accepted responsibility, and, as a result, the government's decision to refrain from filing a motion under § 3E1.1(b) was not arbitrary. *See Collins*, 683 F.3d at 707 (holding that the government's decision to withhold the motion was not arbitrary or unconstitutionally motivated where it was required to undertake trial-like preparations to defend a motion to suppress); *Laspins*, 570 F.3d at 758 (holding that the government's refusal to move for the a third-level reduction was not arbitrary or unconstitutional where the defendant filed numerous objections to the PSR recanting previous statements); *Coleman*, 627 F.3d at 215 (holding that the government had a non-arbitrary good faith belief that Coleman had not accepted responsibility where he made a threatening phone call to a witness).

Darden next argues that the special condition of his supervised release requiring him to submit to unlimited drug testing at his probation officer's discretion is not supported by the facts of the case. Because the district court failed to ask Darden for objections after specifying the conditions of his supervised release, we review the reasonableness of the special condition for an abuse of discretion. *See United States v. Stepp*, 680 F.3d 651, 671 (6th Cir. 2012). "District courts are permitted to impose any special conditions of supervised release they deem reasonably related to the enumerated sentencing factors. *Id*. at 671 (citing 18 U.S.C. § 3583(d)). On the procedural side, we ask whether the district court adequately stated in open court at the time of sentencing its rationale for mandating special conditions of supervised release. *Id*. The substantive inquiry asks whether the condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public. *Id*.

Any conditions imposed must involve no greater deprivation of liberty than is reasonably necessary for the sentencing purposes and must be consistent with any pertinent policy statements issued by the Sentencing Commission. *Id.*

The district court has adequately stated its rationale for mandating drug testing in this case. Darden argues the district court abused its discretion by requiring unlimited drug testing even though, by the court's own admission, he has no history of substance abuse. Although this court has vacated a drug treatment condition where drug use had no relation to any of the offenses in the indictment, *United States v. Frazier*, No. 12–3887, 2013 WL 6224032, at * 5 (6th Cir. Dec. 2, 2013), Darden had numerous prior offenses involving controlled substances, several officers testified that Darden admitted that the drugs found in his vehicle belonged to him, and Darden had participated in a substance-abuse program while incarcerated. *See* 18 U.S.C. § 3583(d); *United States v. Gaynor*, 530 F. App'x 536, 540–41 (6th Cir. 2013). Considering the evidence as a whole, the district court did not abuse its discretion by requiring Darden to submit to periodic drug testing at his probation officer's discretion.

Finally, Darden argues that there is a discrepancy between the district court's oral sentence and the written judgment concerning whether his probation officer may require him to participate in drug treatment during his term of supervised release. Generally, when an oral sentence conflicts with the written judgment, the oral sentence controls. *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011). Where an oral sentence is ambiguous, however, the written judgment may be used to resolve the ambiguity and determine the intended sentence. *Id.*

The district court's oral sentence was ambiguous to the extent that the court ordered Darden to participate in drug treatment during his term of supervised release, but concluded that there was no basis to recommend him for the 500-hour substance abuse program while he was

incarcerated.  However, the written judgment clarified that the court intended to subject Darden

to periodic drug testing, not drug treatment, during his term of supervised release.

Accordingly, we affirm Darden's sentence.