**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0416n.06
Case No. 19-3991

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jul 20, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| KITROY BRIAN BUCHANAN, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUTTON, BUSH, and LARSEN, Circuit Judges.

SUTTON, Circuit Judge. Kitroy Buchanan challenges for the second time the sentence he received for possessing and conspiring to sell marijuana. The first time, Buchanan correctly pointed out that the district court had not made a finding necessary to apply the criminal-livelihood sentencing enhancement. We remanded the case to allow the district court to resentence Buchanan under the proper standard. At issue this time around is whether the district court exceeded the scope of the remand when it required Buchanan to comply with any removal orders as part of the supervised-release terms. Because the district court did not exceed its authority, we affirm.

While United States Postal Workers are known for braving the elements and difficult conditions come what may, Kitroy Buchanan put that principle to the test in 2017. *United States v. Buchanan*, 933 F.3d 501, 505 (6th Cir. 2019). Engaged in the marijuana trade, Buchanan needed

help in delivering product to customers. Before long, he met Dominique Hobbs, a postal worker. Buchanan promised to pay Hobbs $200 for each package of marijuana he delivered. The relationship did not go smoothly. In November, one of Buchanan's packages went missing. Buchanan asked Hobbs for help in locating the delivery. After the pair failed to find the package at the post office, Buchanan became "enraged" and accused Hobbs of stealing the drugs. *Id.* Buchanan forced Hobbs to help him in looking for the package elsewhere. They searched Hobbs's car, went to addresses on other postal carriers' routes, and doubled back to the post office. Unable to locate the delivery, Buchanan let Hobbs go home. But he reiterated, over the phone and via text, that Hobbs should turn over the package for his own safety.

Hobbs called the police. He told the authorities that Buchanan had kidnapped him and described their distribution scheme. An investigation led to the pair's arrest. The government indicted Buchanan for threatening Hobbs and for possessing and conspiring to sell marijuana. Buchanan went to trial. A jury convicted him on the drug charges but acquitted him of threatening Hobbs. At sentencing, the court applied the criminal-livelihood enhancement, which covers individuals who derive a certain amount of income from criminal activity if "criminal conduct was the defendant's primary occupation." *Id.* at 514. The court varied downwards from the 63–78 month guidelines range and imposed a 50-month sentence. It also required Buchanan to comply with any deportation orders.

Buchanan appealed his conviction and his sentence. We rejected his challenges save one. We agreed that the court needed to find that Buchanan committed crimes for a living before it could apply the criminal-livelihood enhancement. We remanded the case for resentencing under the proper standard.

On remand, the district court heard argument, applied the proper standard, and added the enhancement. The court reassessed the § 3553(a) factors and decided to vary downwards a bit further, to a 48-month sentence because Buchanan's time in prison reflected "a lack of other problems." R.92 at 57. At the end of the hearing, the district court also required Buchanan, a non-citizen, to comply with any deportation orders as part of his supervised release. Buchanan appealed.

He raises one objection (that the court should not have required him to comply with any deportation orders), which turns on the answer to one question: Did the district court exceed the scope of our remand order when it required him to cooperate with immigration officials?

Remand orders come in two kinds: general and limited. A general remand permits a complete redo of the sentencing proceeding. *United States v. McFalls*, 675 F.3d 599, 604 (6th Cir. 2012). A limited remand "explicitly outline[s] the issues to be addressed by the district court and create[s] a narrow framework within which the district court must operate." *United States v. Gibbs*, 626 F.3d 344, 350 (6th Cir. 2010) (quotation omitted). How to tell the difference? By looking at the instructions given to the district court in the prior opinion. *United States v. Patterson*, 878 F.3d 215, 217 (6th Cir. 2017). If it contains limiting language, that's usually a determinative sign that the district court does not have authority to start all over. *Id.*

Our prior opinion bears the hallmarks of a limited remand. At the outset of the opinion, we said, "[We] VACATE Buchanan's sentence and REMAND for the district court to reconsider, under the proper legal standard, whether the enhancement applies." *Buchanan*, 933 F.3d at 504. In our conclusion we said roughly the same thing: "[We] VACATE his sentence and REMAND for resentencing. On remand, the district court is instructed to revisit the applicability of the livelihood enhancement under the correct legal standard." *Id.* at 518. We thus did not invite the

3

district court to redo the entire sentencing process. Instead, we instructed the court to evaluate a single issue: Does the enhancement apply under the right standard? Notably, the parties agreed at the sentencing hearing that our remand was a limited one. We agree.

As Buchanan sees it, the limited nature of the remand helps him. It prohibited Judge Gwin, he argues, from imposing the challenged condition of supervised release: that he cooperate with any deportation orders. This argument runs into at least three problems.

One: A premise of his argument is wrong. He seems to think that the court never imposed this condition of supervised release the first time around. That is mistaken. At the sentencing hearing, the court said, "[Buchanan must] comply with any requirement from ICE to report or to withdraw from the United States[]" at the end of the hearing. R. 75 at 55. That provision, it is true, did not appear in the written sentencing order. But in the case of a conflict, the oral pronouncement of a sentence controls. *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011).

Two: Even if the court had not imposed this supervised release requirement the first time around, no reversible error occurred in imposing it this time. At the second sentencing hearing, the court asked whether the parties had any objections, and Buchanan's counsel did not object to this provision. Plain-error review thus applies. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).

No error, plain or otherwise, occurred. In directing the court to "resentence" Buchanan after applying the enhancement correctly, we did not tell the court to reinstate the original sentence if the enhancement applied. *See United States v. Jackson*, 751 F.3d 707, 712 (6th Cir. 2014). Nor did we say what his sentence should be if the enhancement did not apply. *See McFalls*, 675 F.3d at 605. We also did not limit the district court to the original record. *See United States v. Stout*, 599 F.3d 549, 556 (6th Cir. 2010). On the contrary, we expressly permitted the government and

Buchanan to introduce new evidence about whether Buchanan's crimes were his "primary occupation," *Buchanan*, 933 F.3d at 518, a category of evidence that would naturally factor into the court's assessment of the § 3553(a) factors, *id.* at 515–16.

The district court made the right call, then, by proceeding with Buchanan's sentencing as it normally would after making the criminal-livelihood determination. *See United States v. Howard*, 645 F. App'x 459, 464 (6th Cir. 2016). To resentence Buchanan, the court still had to consider his conduct in light of the § 3553(a) factors when imposing a term of imprisonment, a term of supervised release, and the conditions of that release. 18 U.S.C. §§ 3553(a), 3583(a). As part of that process, the district court could require Buchanan to comply with deportation orders. *See United States v. Ossa-Gallegos*, 491 F.3d 537, 541 (6th Cir. 2007); 18 U.S.C. § 3583(d). By completing all of those steps, the district court did not exceed its authority. It adhered to the instructions we gave.

Three: This term of supervised release made little, if any, difference anyway because federal statutes already require Buchanan to comply with deportation orders. Every defendant on supervised release must not "commit another Federal . . . crime during the term of supervision" no matter what other conditions a district court imposes. 18 U.S.C. § 3583(d). Another statute makes it a federal crime to refuse to depart from the United States after a final order of removal. 8 U.S.C. § 1253(a)(1). Buchanan's deportation condition, then, is at most a helpful reminder.

In objecting to this conclusion, Buchanan points out that everyone at the sentencing hearing agreed that the district court could consider only "the livelihood issue" and "general 3553 factors." R. 92 at 3–4. True enough. But that does not dictate what the § 3553 factors require, including that they require this condition of supervised release or that one. *See* 18 U.S.C. §§ 3553(a), 3583(a). Just as he received the benefit of his good behavior in prison in lowering his

sentence under the § 3553 factors, so the court could look at his status as a non-citizen in requiring him to comply with any deportation orders.

Nor does the law-of-the-case doctrine help Buchanan. The remand order permitted the parties to argue what sentence Buchanan should receive based on the new record before them. It did not require them to adhere to the same advocacy positions as before or require the judge to impose the same sentence. Otherwise, Buchanan's additional downward variance would also be an error. At any rate, as noted, Buchanan's first sentence included the same condition he objects to now.

Buchanan adds that, even if the district court had authority to impose this condition on his supervised release, there is a disparity between the written judgment and the oral pronouncement of his sentence. But there is no conflict. At the second sentencing, the district court announced in open court that Buchanan would have to "cooperate with any removal or deportation." R. 92 at 59. In its written judgment, the court spelled out that Buchanan must (1) surrender to immigration authorities if required, (2) remain outside the United States if deported, and (3) report to a probation office within 72 hours if he returns. All that the written judgment did was explain what "cooperate with any removal or deportation" means. That is far from unusual and hardly improper. *United States v. Darden*, 552 F. App'x 574, 578–79 (6th Cir. 2014) (per curiam). Buchanan offers no case to the contrary or any contrary argument about what the district court's oral sentence otherwise meant.

We affirm.