NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0193n.06

Case No. 21-6071

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 25, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| MARIO VELASQUEZ-GOMEZ, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Mario Velasquez-Gomez pled guilty to two counts of federal drug trafficking crimes and was convicted by a jury for possessing a firearm in furtherance of the drug trafficking. The district court sentenced Velasquez-Gomez to a total term of imprisonment of 175 months. He now appeals, challenging the sufficiency of the evidence for his firearm conviction and arguing that the government impermissibly refused to seek an additional reduction of his offense level at sentencing for acceptance of responsibility. We affirm.

I.

On July 13, 2018, Velasquez-Gomez was apprehended by Kentucky State Police following a tip from a confidential informant that Velasquez-Gomez was trafficking drugs. When detained, Velasquez-Gomez was carrying a yellow bag containing over a kilogram of cocaine, two cell phones, and over $2,000 in cash. Police obtained and executed a search warrant of his home. During the search, a half-kilogram of cocaine was discovered in the garage, along with sandwich bags, a digital scale, a metal form shaped like a brick, and a small tied off bag of cocaine—all

located in a grey backpack. Inside the house, approximately twenty to twenty-five feet from the backpack, police found two semiautomatic handguns on a shelf. The guns, a nine millimeter and a .40 caliber, were unloaded, but live rounds were located with the firearms. A round of ammunition fitting the nine millimeter was also found in the grey backpack, alongside the half-kilogram of cocaine and other materials.

Velasquez-Gomez was indicted on three counts: (1) conspiracy to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1) and 846; (2) possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1); and (3) possession of firearms in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Velasquez-Gomez pled guilty to both drug trafficking crimes without a written plea agreement, but not to the firearm count.

In July 2021, Velasquez-Gomez faced a two-day trial for the § 924(c) firearms count. The government presented six witnesses and an array of physical evidence, after which the jury returned a guilty verdict.

The presentence investigation report ("PSR") grouped the drug-trafficking crimes for sentencing and calculated a criminal history in Category I and a total offense level of 32, with no adjustment downward for acceptance of responsibility. Velasquez-Gomez's counsel objected to the refusal to grant a downward adjustment for acceptance of responsibility. The district court found the issue to be "a close question" but ultimately awarded the two-point downward adjustment to the offense level for acceptance of responsibility for the drug crimes. DE 183, Sentencing Tr., Page ID 1313, 1315. The court further noted that the government was not moving for a third level of acceptance credit, as it could under U.S.S.G. § 3E1.1(b), and found that that decision "[was not] made for any improper reason whatsoever that could cause the Court to question that determination." *Id.* at Page ID 1315. Velasquez-Gomez's counsel objected to the

failure of the government to move for a third level of acceptance credit and the court overruled that objection.

With the reduced offense level of 30 and Criminal History Category I, the Guidelines range for the drug trafficking crimes ranged from 97 to 121 months and the firearms count carried a minimum consecutive sentence of 60 months. Velasquez-Gomez requested a total sentence of 120 months, while the government recommended at least 169 months' total imprisonment. The court sentenced Velasquez-Gomez to 175 months' imprisonment, followed by five years of supervised release.

Velasquez-Gomez appeals and raises two challenges: first, the sufficiency of the evidence for his firearms conviction; and second, the government's refusal to move for a third level of acceptance credit at sentencing.

II.

We review a challenge to the sufficiency of the evidence de novo. *United States v. Bankston*, 820 F.3d 215, 235 (6th Cir. 2015). "When the defendant challenges the sufficiency of the evidence to support a jury verdict, we review the evidence in the light most favorable to the government." *United States v. Woods*, 14 F.4th 544, 551 (6th Cir. 2021) (citation omitted). In assessing the record, we must affirm a defendant's conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (emphasis omitted) (quoting *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016)).

Velasquez-Gomez was convicted of possessing a firearm in furtherance of a drug-trafficking crime, pursuant to 18 U.S.C. § 924(c). Velasquez-Gomez concedes that a drug-trafficking crime occurred—he pled guilty to two drug offenses. The two issues before us with

respect to the sufficiency of the evidence are whether the government established constructive possession of the weapons and whether the government presented adequate evidence that Velasquez-Gomez possessed the firearms "in furtherance of" a drug-trafficking offense.

A.

"A jury is entitled to infer that a person exercises constructive possession over items found in his home." *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (citation and internal quotation marks omitted). Evidence indicating ownership includes testimony that the individual lived on the premises, clothing, and personal papers. *Id.*

Here, the government presented sufficient evidence of constructive possession. The jury heard that Velasquez-Gomez told officers he lived at the home and had marijuana in the refrigerator. Officers also testified that they found Velasquez-Gomez's truck in the driveway and his clothes, passport, and Kentucky identification inside the home. While mail with other names was found in the home, the jury heard that this was not uncommon for narcotics traffickers, as sometimes fake names are used on mail to conceal the trafficker's identity. In sum, the evidence was sufficient for a reasonable juror to conclude that Velasquez-Gomez lived in the home and had constructive possession over the items inside, including the firearms.

B.

For possession of a firearm to be "in furtherance of" a drug-trafficking crime, "the weapon must promote or facilitate the crime." *United States v. Mackey*, 265 F.3d 457, 460-61 (6th Cir. 2001). That is, there must be "a specific nexus between the gun and the crime charged." *Id.* at 462 (citing *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001)). To aid in determining whether this nexus exists, *Mackey* provided a list of factors for courts to consider, including: (1) whether the firearm was "strategically located so that it [was] quickly and easily available for

use"; (2) "whether the gun was loaded"; (3) "the type of weapon"; (4) "the legality of its possession"; (5) "the type of drug activity conducted"; and (6) "the time and circumstances under which the firearm was found." *Id.*; *see also United States v. Guadarrama*, 591 F. App'x 347, 352 (6th Cir. 2014); *United States v. Leary*, 422 F. App'x 502, 510 (6th Cir. 2011). But this list is non-exhaustive. "Courts should not lose sight of the forest (whether the defendant possessed the firearm to facilitate the crime) for the trees (whether or how each factor applies)." *United States v. Maya*, 966 F.3d 493, 501 (6th Cir. 2020).

The government presented sufficient evidence from which a rational trier of fact could have found that Velasquez-Gomez possessed the firearms for a purpose of facilitating his drug-trafficking activity. Four of the six factors, and a holistic analysis of the evidence, support the jury's conclusion. To begin, the type of large-scale drug activity suggested that the guns were possessed in connection with that activity. Detectives on the case explained to the jury that Velasquez-Gomez was involved with a larger drug-trafficking organization and that, within the organization, he was responsible for distribution of cocaine for all of Lexington, Kentucky. These statements were supported by the sheer quantity of cocaine discovered, both on Velasquez-Gomez's person and at the house. The street value for the half-kilogram of cocaine discovered at the house was at least $15,000, though the jury learned the value could be much higher, over $40,000, if sold by the gram. Drugs worth thousands of dollars, particularly when found alongside materials that suggest a drug packaging and distribution operation, indicate large-scale drug trafficking and an incentive "to protect the drugs, the proceeds of drug sales, or the dealer himself." *Maya*, 966 F.3d at 500 (quoting *United States v. Bailey*, 882 F.3d 716, 721 (7th Cir. 2018)). Additionally, the presence of a nine-millimeter round in the same backpack as the half-kilogram

of cocaine and packing materials further solidifies the connection between the weapon and Velasquez-Gomez's drug-trafficking activity.

Next, the type of firearm and illegality of its possession support the conviction. The firearms were semiautomatic, which the jury heard was a type of firearm commonly found with drug traffickers because semiautomatic weapons are easier to reload than a revolver. The court further informed the jury that it is unlawful for an individual who is in the country illegally to possess a firearm that has travelled in interstate commerce, and the jury was presented with some evidence from which it could reasonably conclude that Velasquez-Gomez knew that he was in the country illegally.[1] *See* 18 U.S.C. § 922(g)(5)(A). Velasquez-Gomez's firearms are far from the "innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Mackey*, 265 F.3d at 462.

As Velasquez-Gomez reminds us, not all factors weigh so heavily in the government's favor. The firearms were not found on Velasquez-Gomez's person nor were they loaded. However, we have previously found that an unloaded gun in a closet can still be possessed in furtherance of a drug crime, particularly where drugs, money, and ammunition are nearby and readily accessible. *See Guadarrama*, 591 F. App'x at 352. Here, the firearms were found next to the back door of the house, about twenty feet from the half-kilogram of cocaine, and so close to ammunition that one could touch both at the same time. While proximity alone cannot establish a violation of § 924(c), the specific location and its proximity can serve as evidence that the firearm

---

[1] The district court's comments at trial regarding whether Velasquez-Gomez was in the country illegally may raise issues relating to *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019) ("A defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require."). However, we need not address any *Rehaif* issues that may be implicated by the district court's comments because the parties' counsel have not briefed such issues and Velasquez-Gomez has not raised it. *See Doe v. Michigan State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021).

was strategically located to be quickly and easily available for use.  *See, e.g., United States v. Lengen*, 245 F. App'x 426, 436 (6th Cir. 2007).

The totality of the circumstances and the weight of the *Mackey* factors lead us to conclude that sufficient evidence existed for a jury to convict Velasquez-Gomez of possessing a firearm in furtherance of a drug trafficking crime.

### III.

We next turn to Velasquez-Gomez's sentencing for the grouped drug-trafficking offenses. Although the PSR recommended against awarding Velasquez-Gomez *any* reduction of his offense level for acceptance of responsibility, the district court granted a two-level reduction under U.S.S.G. § 3E1.1(a).  Velasquez-Gomez's counsel then objected to the government's failure to move for a third level of reduction under § 3E1.1(b).  The court overruled the objection and Velasquez-Gomez now appeals.

The case law in our circuit is inconsistent about the standard of review applied to district court decisions concerning acceptance of responsibility.  *Compare United States v. Darden*, 552 F. App'x 574, 577 (6th Cir. 2014) (reviewing for abuse of discretion), *with United States v. Corrigan*, 128 F.3d 330, 336 (6th Cir. 1997) (reviewing for clear error); *see also United States v. Lapsins*, 570 F.3d 758, 769 (6th Cir. 2009) (acknowledging the lack of clarity).  However, we need not resolve this question, as it has not been fully briefed and Velasquez-Gomez's argument fails even under de novo review.

Section 3E1.1(a) of the Sentencing Guidelines provides for a two-level reduction in the offense level of a crime if the defendant "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a).  Subsection (b) then permits the government to move for an additional one-level reduction in the offense level if it states that the defendant "has assisted authorities in the

investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). The government's discretion to move for this additional reduction "is subject only to the limitation that the government's refusal to file a § 3E1.1(b) motion cannot be based on a 'constitutionally impermissible factor' and cannot be arbitrary." *United States v. Collins*, 683 F.3d 697, 704-05 (6th Cir. 2012) (quoting *United States v. Coleman*, 627 F.3d 205, 215 (6th Cir. 2010)). The defendant bears the burden to present "objective evidence of an improper motive or arbitrary action." *Id.* at 705 (quoting *Lapsins*, 570 F.3d at 769). In other words, the district court must accept the government's decision to move or not move for additional responsibility credit under § 3E1.1(b) unless the defendant can produce some objective evidence to show improper motive or arbitrary action.

Velasquez-Gomez argues that the government withheld the motion for reduction "for the impermissible reason of Velasquez-Gomez exercising his constitutionally guaranteed right to test the government's case against him"—that is, going to trial on the firearms count. CA6 R. 41, Appellant Br., at 22-23. And the government agrees that a chief reason why it declined make a § 3E1.1(b) motion was Velasquez-Gomez's "refusal to accept responsibility for possessing the firearms." CA6 R. 52, Appellee Br., at 17. This is not a "constitutionally impermissible factor" such as race or religion, nor is it arbitrary, as it was rationally related to the government's interest in preservation of resources. *See Wade v. United States*, 504 U.S. 181, 186 (1992). Although a "[c]onviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction," U.S.S.G. § 3E1.1 cmt. n.2, Velasquez-Gomez's refusal to accept responsibility for the related (but non-grouped) firearms offense is a permissible reason for the government to

withhold a § 3E1.1(b) motion. *See United States v. Boykin*, 679 F. App'x 400, 401, 405 (6th Cir. 2017); *see also United States v. Flowers*, 476 F. App'x 55, 64-65 (6th Cir. 2012) (affirming the district court's denial of even a two-level reduction under § 3E1.1(a) where defendant did not accept responsibility for firearms charge but pled guilty to drug charges).

Moreover, the government asserted as an additional ground for its refusal to move for a third acceptance credit under § 3E1.1(b) Velasquez-Gomez's decision to move for rearraignment on the drug trafficking offenses eight days before trial and his challenges to the drug quantity attributed to him at sentencing. While Velasquez-Gomez accepted responsibility for the drug offenses by pleading guilty, he did not do so "early enough to save the government the expense of preparing for trial." *Lapsins*, 570 F.3d at 770; *see also* U.S.S.G. § 3E1.1 cmt. n.6. Velasquez-Gomez agreed to plead guilty to the drug offenses just eight days before trial began. Velasquez-Gomez asserts that the government is responsible for this late plea by failing to timely respond to Velasquez-Gomez's initial plea offer; however, the government had already begun preparing for trial when discussion of the plea offer occurred.

The district court did not abuse its discretion in refusing to award Velasquez-Gomez a third acceptance credit, as the government's decision not to move for that reduction was neither arbitrary nor constitutionally impermissible.

IV.

For the foregoing reasons, we affirm Velasquez-Gomez's conviction and sentence.