NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0450n.06

Nos. 16-5113/5138

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 01, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA, )
)
   Plaintiff-Appellee, )
)
            v. )
)
DIDIER OLVERA ROMERO; EDGAR LERMA )
FLORES, aka Carlos Alberto Penuelas Rodriquez, )
)
   Defendants-Appellants. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

BEFORE: NORRIS, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Following guilty pleas for conspiracy to distribute cocaine and crystal methamphetamine, defendants Edgar Lerma Flores and Didier Olvera Romero appeal their sentences. Flores argues that the district court erred in failing to give him advance notice it would sentence him above his Guidelines range, and Olvera contends that the district court should have given him a two-level mitigating role reduction. We disagree and affirm.

I.

In April 2015, Edgar Lerma Flores, a large-scale drug trafficker based in Chicago, transported a large shipment of methamphetamine and cocaine to Romero Beltran Duran ("Beltran") and Eric Ricardo Canto in Lexington, Kentucky (R. 116, ID 543). He enlisted codefendant Didier Olvera Romero ("Olvera") and two other men to accompany him on the trip;

Olvera did the driving (R. 116, ID 544; R. 166, ID 775, 786). In Lexington, the four men stayed at Beltran's and Canto's drug house while Flores coordinated with local dealers to push the product to their buyers. Once Flores recouped a substantial portion of the proceeds, the four men brought the money back to Chicago and returned to Lexington with three more kilograms of methamphetamine to repeat the process.

Fortunately, police intervened before the process could repeat itself too many times. One of Beltran's local buyers was an informant working with police, who used the information from two introductory buys to identify the location of Beltran's drug house. When the informant set up a third controlled buy, police observed Canto leave the drug house at the appointed time and travel to the buy location. They also observed a second vehicle, a tan Tahoe carrying four men, leave the residence. Shortly after Canto consummated the deal, police pulled him over and arrested him. During the stop, police observed the tan Tahoe pass within a few feet of Canto's vehicle on its way back to the drug house. After just a few minutes at the residence, the Tahoe left again, at which point the police stopped the vehicle. Inside were Olvera, Flores, and the two other men. Olvera, as the driver, consented to a search, which uncovered five kilograms of cocaine. During a search of the drug house, police found another kilogram of cocaine and seven pounds of crystal methamphetamine.

Flores and Olvera each pleaded guilty to two counts: (1) conspiracy to distribute five kilograms or more of cocaine and (2) conspiracy to distribute 500 grams or more of methamphetamine.

The district court sentenced Olvera first. In his Presentence Investigation Report (PSIR), the probation officer calculated Olvera's offense level at 31, without the benefit of a two-level mitigating role reduction under U.S.S.G. § 3B1.2. Olvera objected to this, arguing that he was

merely a driver and that the totality of the factors listed in § 3B1.2 supported a reduction. The probation officer disagreed. Although Olvera satisfied several of the factors listed in Application Note 3(C), the officer concluded that Olvera's participation "d[id] not sufficiently set him apart in order to qualify him as 'substantially less culpable than the average participant.'" After careful review of § 3B1.2 and its Application Notes, including the recent Amendment 794, and a lengthy back-and-forth with counsel, the district court denied the two-level mitigating role reduction. It agreed that Olvera satisfied a majority of the factors in Application Note 3(C), but responded that they were not exhaustive and that the particular facts of the case established that he was not substantially less culpable than the average participant in the criminal activity. Operating from a 108-to-135-month Guidelines range, the district court sentenced Olvera to 118 months.

A week later, the district court sentenced Flores. After hearing from defendant and counsel for both sides regarding the appropriate sentence and analyzing the sentencing factors laid out in 18 U.S.C. § 3553(a), the court concluded that "a variance is appropriate." The "astounding amount" of drugs and "this defendant's actions," the court explained, "justif[ied] a sentence above the guideline range." It sentenced Flores to 300 months, seven months above his 235-to-293-month Guidelines range. In response to the court's *Bostic* inquiry, Flores objected to "the upper variance with a sentence outside the guideline range."

Both defendants timely appealed, challenging their sentences.

## II.

## A.

We begin with Flores' appeal. Flores argues that the district court's decision to sentence him above the Guidelines range without prior notice violated Federal Rule of Criminal Procedure

32(h). In *Irizarry v. United States*, however, the Supreme Court held that Rule 32(h) does not apply to variances. 553 U.S. 708, 714–16 (2008). Flores acknowledges *Irizarry*, but argues that it does not control because the district court actually *departed* from the Guidelines, and Rule 32(h) still requires prior notice for departures. *See* Fed. R. Crim. P. 32(h).

The first problem with Flores' argument is that the district court (and even his own trial counsel) used the term variance, not departure. Presumably familiar with the glossary of the U.S. Sentencing Guidelines Manual, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and our prior admonishment to "indicate clearly whether it is 'departing' or 'varying,'" *United States v. Denny*, 653 F.3d 415, 419 (6th Cir. 2011), it is usually the case in this setting that a district court says what it means and means what it says.

But it is not always the case. *See, e.g.*, *id.* at 420. When pressed, we may look to the surrounding context to determine whether the district court, despite its word choice, actually imposed a departure or variance. *See id.* The key question is "whether the court's deviation from the sentencing guidelines was done pursuant to the factors enumerated in § 3553(a)"—if so, it is a variance for which no notice is required. *Id.* Relying on this caveat of case law, Flores argues that the overall context, and in particular the district court's emphasis on the "astounding amount" of drugs, illustrates that the court actually departed from the Guidelines range.

Surrounding context offers Flores no relief. First, we have previously held that drug quantity is a reflection of the "seriousness of the offense" and thus a proper consideration under § 3553(a). *See, e.g.*, *United States v. Sandoval*, 501 F. App'x 491, 493 (6th Cir. 2012) (per curiam); *United States v. Milan*, 218 F. App'x 492, 498 (6th Cir. 2007). At best, then, the district court's reference to drug quantity supports both a departure and a variance; it certainly does not contradict the district court's word choice.

-4-

Second, panning out even further reveals that the court's sentencing decision was based solely on consideration of relevant § 3553(a) factors. Just before announcing its decision, the court explained that Flores was not someone who simply "took a wrong turn in life," but rather was someone who got into the drug trade "intention[ally]"; that his "coming here illegally [was] a further indication that he does not have respect for the laws of the United States"; that the offense was an "extensive conspiracy" with defendant "at the top of the food chain"; and that "severe punishment [was] needed for this particular offense" in order to deter defendant and others inclined to distribute drugs into Kentucky. All of these are appropriate considerations under § 3553(a). *See* 18 U.S.C. § 3553(a)(1)-(2) ("The court . . . shall consider[:] the nature and circumstances of the offense and the history and characteristics of the defendant[ and] the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and . . . to afford adequate deterrence[.]"). And nowhere during this discussion did the district court indicate that a particular provision of the Guidelines failed to adequately account for the amount of drugs under U.S.S.G. § 5K2.0(a)(3). *Cf. United States v. Barnett*, 460 F. App'x 582, 587–89 (6th Cir. 2012) (per curiam) (explicitly using the term "departure" and referencing § 5K2.0).

In sum, the broader context reveals that "the court's deviation from the sentencing guidelines was done pursuant to the factors enumerated in § 3553(a)." *Denny*, 653 F.3d at 420. That, in conjunction with the court's word choice, confirms that the district court imposed a variance. Rule 32(h)'s prior notice requirement therefore does not apply to the court's deviation.

Flores alternatively argues that, even if Rule 32(h) didn't require prior notice, principles of due process did. He relies on our decision in *United States v. Coppenger*, in which we held that the district court abused its discretion under Rule 32(i)(1)(B) by failing to provide an

opportunity to respond to its decision to impose an upward variance based on confidential, undisclosed facts contained in a codefendant's PSIR. 775 F.3d 799, 802, 807 (6th Cir. 2015). Unlike *Coppenger*, however, the district court here did not rely on undisclosed facts. Defendant does not argue that it did or that he was denied an opportunity to argue for a lower sentence in light of the amount of drugs reflected in his PSIR.

What surprised him, then, was not the fact that he was responsible for a substantial amount of drugs, but that the district court attached such significance to it. And to that, our response is twofold: One, a defendant is entitled to notice of the pertinent facts on which the court will base its decision or an opportunity to address the court, *see* Fed. R. Crim. P. 32(d), (i), but he is not entitled to a preview of the court's thought process or expected decision ahead of sentencing. And two, drug quantity is "a 'garden variety consideration' that competent defense counsel should be held to have anticipated" in any large-scale drug trafficking conspiracy case. *Coppenger*, 775 F.3d at 805 (quoting *Irizarry*, 553 U.S. at 716). It was therefore entirely foreseeable that the district court would take into consideration the "astounding amount" of drugs Flores trafficked in determining the appropriate sentence under § 3553(a). *See id.* at 804.

B.

Next, Olvera argues the district court erred in denying him a mitigating role reduction.

Section 3B1.2 of the Sentencing Guidelines authorizes a two-level reduction if the defendant was a "minor participant," which is defined as someone who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b) and cmt. n.5. The defendant must be "substantially less culpable than the average participant in the criminal activity" to qualify for a reduction. U.S.S.G. § 3B1.2 cmt. n.3(A). Because mitigating role adjustments are "heavily dependent on the facts of a

particular case," the Sentencing Commission has provided a list of five non-exhaustive factors

for sentencing courts to consider:

> (i)     the degree to which the defendant understood the scope and structure of
>         the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning or organizing
>         the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making authority or
>         influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of
>         the criminal activity, including the acts the defendant performed and the
>         responsibility and discretion the defendant had in performing those acts;
>         [and]
>
> (v)     the degree to which the defendant stood to benefit from the criminal
>         activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).  The defendant bears the burden of proving a mitigating role in the

offense by a preponderance of the evidence.  *United States v. Salgado*, 250 F.3d 438, 458 (6th

Cir. 2001).  We review the district court's decision for clear error.  *United States v. Groenendal*,

557 F.3d 419, 423 (6th Cir. 2009).

The district court denied Olvera's reduction request based largely on its disagreement

with the premise of defendant's request:  that he was "nothing more than [a] driver."  If that were

the case, the district court asked, then why have four men travel with the product instead of just

one?  Defense counsel didn't have a good answer, but the district court did:

> If you have a large quantity of drugs . . . , it would stand to reason that if you're
> taking an eight-hour trip from Chicago, you may want to have more eyes on the
> drugs, even if they don't know the exact quantity.  I don't want to say muscle
> because there's no indication of weapons or anything of that nature, but you have
> more individuals acting in concert to protect the merchandise than if you have just
> a smaller quantity, which would be supported by the fact that they did not return
> after the delivery was made.  They stayed at the [drug house] location for a
> significant period of time rather than go back to Chicago.

The court found additional support in the fact that Olvera was seen driving past the scene of Canto's arrest, conducting what it characterized as "counter-surveillance." Thus, the district court ruled, although Olvera satisfied several of the Application Note 3(C) factors, the totality of the circumstances revealed that he was an average participant in the criminal activity and not substantially less culpable than the average participant.

Olvera argues that the district court erred in denying his reduction request because a majority of the factors provided in Application Note 3(C) weighed in his favor. We agree that most of the factors support Olvera, as did the district court (and government for that matter). There is no evidence Olvera understood the true scope of the conspiracy, which reached all the way from Mexico to Ohio, Tennessee, and elsewhere. Olvera did not plan the scheme, exercise any decision-making authority, or receive anything more than a flat rate for his services. "[T]he degree to which" Olvera satisfied most of the factors was, indeed, minimal. *See* U.S.S.G. § 3B1.2 cmt. n.3(C). But the reason for this is not because Olvera was "substantially less culpable than the average participant"; it's because Flores retained an inordinate amount of control over the entire operation. And as the district court realized, the same could have been said for the other two men who accompanied Flores. In effect, the factors revealed that Olvera was less culpable than Flores. But what they did not show, and what Olvera was required to establish, was that he was substantially less culpable than the *average* participant.

Rather than limit itself to the listed factors, the district court relied on the particular facts of the case in determining whether Olvera was substantially less culpable than the average participant. And with respect to that reasoning, defendant raises two challenges. Olvera first argues that the district court erred in limiting the total number of "participants" in the criminal activity to the two Lexington dealers and the four men who transported the drugs from Chicago.

According to Olvera, given the nature of drug trafficking activity, there must be other unindicted coconspirators who brought the drugs to Chicago and others who sold them to individual users in Lexington. But this argument overlooks that, in determining whether to grant a mitigating role reduction, "the district court must consider the portion of the relevant conduct of the conspiracy that was attributable to the defendant for purposes of determining his base offense level." *Salgado*, 250 F.3d at 458. In other words, a defendant's role in the offense is measured "in comparison to other participants in that relevant conduct." *United States v. Roberts*, 223 F.3d 377, 381 (6th Cir. 2000). Thus, because Olvera was not involved in the distribution to Chicago or to other unidentified street dealers in Lexington, the district court did not err in limiting the number of participants to the six individuals involved in the transportation and receipt of drugs between Chicago and the Lexington drug house.

Olvera also contends that the district court clearly erred in finding that he was providing "protection" for Flores and the drugs, as there is no basis in the record to conclude that Olvera was armed or did anything other than drive. But the district court acknowledged that there was no evidence Olvera was armed with a weapon. It also agreed that defendant drove, but it emphasized the peculiar circumstances under which he did so. Olvera accompanied Flores with two other men when it only took one person to transport the product; this, the court found, indicated that Olvera and the two other men were more than just along for the ride. The court also observed that Olvera monitored the drug trafficking activity in Lexington, having left the drug house at the same time as Canto during the third sale, and engaged in reconnaissance during Canto's arrest. He also stayed at the drug house throughout the trafficking activity, rather than return to Chicago like a typical "mule." Defendant offers no reason why these findings are clearly erroneous. In light of these factual findings, and the district court's superior position to

make the fact-intensive mitigating role decision, we cannot say that the district court clearly erred in denying Olvera a two-level mitigating role reduction. *See Groenendal*, 557 F.3d at 423.

III.

For these reasons, we affirm Flores' and Olvera's sentences.