**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0218n.06

Case No. 17-3318

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 26, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| LEBRON CHARLES BUNKLEY, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, THAPAR, and BUSH, Circuit Judges.

THAPAR, Circuit Judge. Somebody told the police that Lebron Bunkley was selling drugs out of his house in Youngstown, Ohio. So officers began surveilling the property, and sure enough, two buyers showed up and bought drugs from Bunkley in the home's breezeway. When the buyers drove away, the police followed and stopped their car to conduct a search. Inside, they found a used syringe, a handful of prescription pills, and other drug paraphernalia. The buyers admitted that they had purchased heroin from Bunkley moments earlier and then immediately injected it.

A few days later, one of the buyers—John Petrello—decided to cooperate with the police. Petrello told the officers that he had been buying heroin from Bunkley for the last three years. Each purchase played out the same way: Petrello called Bunkley with his order, picked up the drugs from Bunkley's house, and then walked to a nearby field to inject the drugs. With this

information in hand, the officers enlisted Petrello's help in conducting a controlled buy. They directed him to return to Bunkley's house to purchase forty dollars' worth of heroin while they looked on. The operation went smoothly, and Petrello and the police went their separate ways.

Unfortunately, the police came across Petrello a few weeks later. But this time, they found his body laying lifeless in the field near Bunkley's house. He was still holding a used syringe, and another syringe was on the ground next to him. According to the coroner, Petrello died from "multiple drug toxicity due to alprazolam, heroin, and sertraline." And a search of Petrello's phone revealed that the last person he called was Bunkley.

The police obtained a warrant and searched Bunkley's house. There, they found 345 grams of cocaine, 285 grams of heroin, 84 grams of crack, some methylenedioxyamphetamine, two loaded guns, two digital scales, a metal press, and a grinder. The cocaine and heroin were portioned into small bags ready for distribution, and in an interview with officers after the search, Bunkley admitted that he sold heroin to Petrello on the day before Petrello was found.

The government charged Bunkley with three counts of drug trafficking and one count of being a felon in possession of a firearm. Bunkley pled guilty to all charges and the district court sentenced him to thirty years in prison—varying upward from the Guidelines by thirty-three months. The district court also ordered lifetime supervised release. Bunkley now appeals his sentence. We affirm in part and reverse in part.

I.

Bunkley raises six arguments on appeal, each of which attacks the way the district court crafted his sentence. Since he presented none of these arguments to the district court, we review them for plain error. Fed. R. Crim. P. 52(b); *see United States v. Vonner*, 516 F.3d 382, 391–92 (6th Cir. 2008) (en banc) ("While we do not require defendants to challenge the 'reasonableness'

of their sentences in front of the district court, we surely should apply plain-error review to any arguments for leniency that the defendant does not present to the trial court."). So to succeed, Bunkley must show that the district court made an error that was plain, affected his substantial rights, and seriously undermined the fairness, integrity, or public reputation of his judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

## II.

During the sentencing hearing, the district court emphasized Bunkley's role in Petrello's death and the harm that Bunkley's drug trafficking caused in the local community. At various points, the court reiterated that Petrello "ultimately died from [the] heroin provided by Mr. Bunkley," and that it was impossible to know "how many other deaths or lives have been destroyed by Mr. Bunkley's heroin trafficking." R. 40, Pg. ID 158, 164. Bunkley claims that these statements resulted in reversible error for four reasons.

*Speculation.* First, Bunkley argues that there was no evidence in the record supporting the district court's belief that (1) Bunkley provided the heroin that led to Petrello's death, and (2) Bunkley had destroyed any other lives. As such, Bunkley claims the district court was impermissibly speculating when it made these statements. We disagree. While it is true that courts cannot sentence defendants based on speculation or unfounded assumptions, they also are not limited to facts admitted by the parties or proven beyond a reasonable doubt. *United States v. Van*, 541 F. App'x 592, 597–98 (6th Cir. 2013); *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006). Instead, a sentencing court can rely on any fact that is supported by a preponderance of the evidence. *United States v. Klups*, 514 F.3d 532, 537–38 (6th Cir. 2008).

The record provided a sufficient basis for the district court to conclude that Bunkley caused Petrello's death and harmed others in the community. To start, Bunkley admitted that he

sold heroin to Petrello on the day before the body was found, and the coroner later determined that Petrello overdosed after ingesting heroin and two other drugs. The police found Petrello in the field by Bunkley's home—the very same place Petrello regularly went to immediately inject the drugs he purchased from Bunkley. And Petrello was still holding a used syringe, indicating that he died right after injecting the drugs. These facts are enough to conclude by a preponderance of the evidence that Petrello ultimately died from the heroin that Bunkley sold him. *See United States v. Salyers*, 661 F. App'x 862, 866 (6th Cir. 2016) (holding that preponderance of the evidence standard was met where defendant admitted giving heroin to an overdose victim two days before the victim died from the combined effects of heroin and other drugs and defendant never offered evidence showing that there were other suppliers).

The record also establishes that Bunkley was a large-scale, life-long drug dealer who fed addiction in his community. For one, the police found over seven hundred grams of drugs when they searched his house. Bunkley had already divided the heroin and cocaine into small baggies, and he admitted that he intended to sell them. In addition, Bunkley's criminal history demonstrated that this was not the first time Bunkley had gotten in trouble for dealing drugs. In fact, he had already received an eight-year sentence for selling cocaine. The district court did not need a list of drug addicts' names, as Bunkley seems to suggest, to conclude that Bunkley's drug-trafficking activities caused harm in the community—these facts were enough. *See United States v. Ford*, Nos. 17-3432/17-3456, 2018 WL 1037417, at \*6 (6th Cir. 2018) (holding that court could infer that a defendant had more likely than not caused an overdose or other harms by selling heroin); *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir. 2016) (holding that it was not an error to conclude "that distribution of heroin in a community caused damage to that

community"). The district court therefore did not engage in impermissible speculation when sentencing Bunkley.

*Notice.* Second, Bunkley argues that the district court should have given him notice that it was going to consider Petrello's death and the harms Bunkley caused in his community. This argument is misguided. District courts are not required to notify defendants of their intent to vary upward from the Guidelines. *Irizarry v. United States*, 553 U.S. 708, 716 (2008). Nor are they required to warn defendants that they believe certain facts in the record may warrant a lengthy sentence. *United States v. Romero*, 704 F. App'x 445, 449 (6th Cir. 2017). So the only way Bunkley can obtain relief is by showing that the district court's discussion of these facts "came as a surprise" and prejudiced his presentation to the district court. *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (citing *United States v. Rossi*, 422 F. App'x 425, 432 (6th Cir. 2011)). This Bunkley cannot do.

The presentence report referenced Petrello thirty times. Its discussion of the offense conduct described Bunkley's role in Petrello's overdose at length. Bunkley's written plea agreement did as well. Bunkley himself acknowledged his accountability to Petrello's family during his allocution—before either the government or the court had done so. As such, Bunkley can hardly claim that he was surprised that Petrello came up at sentencing. *See Rossi*, 422 F. App'x at 433. Bunkley nevertheless seems to claim that he did not foresee how much Petrello would come up, or that the district court would emphasize his death—especially since the presentence report listed "no identifiable victim" of Bunkley's crimes. But Bunkley was not entitled to "a preview of the court's thought process" ahead of sentencing. *Romero*, 704 F. App'x at 449. He was entitled only to notice of the "pertinent facts on which the court [would] base its decision," which he got. *Id.*

In addition, district courts routinely focus on the harm defendants cause to the community. *See, e.g.*, *Hodges*, 641 F. App'x at 532. Indeed, in fashioning an appropriate sentence, courts must consider whether the sentence will both reflect the seriousness of the offense and protect the public. 18 U.S.C. §§ 3553(a)(2)(A), (C); *see Irizarry*, 553 U.S. at 716 (explaining that "considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing" (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 5 (1st Cir. 2008))). And Bunkley's attorney even anticipated that the district court would consider the harm Bunkley caused. When asking the district court for leniency, Bunkley's attorney pleaded that Bunkley "recognized what he did was wrong, recognize[d] the harm that the drugs were causing in the community and seem[ed] to very well understand the situation he placed himself and the community in." R. 40, Pg. ID 150. It is therefore hard to imagine that Bunkley was surprised when the district court discussed the same considerations a few moments later. *See Rossi*, 422 F. App'x at 433.

Moreover, in order to succeed on this ground, Bunkley also had to explain what he would have done differently at the sentencing hearing had the district court given him the notice he wanted. *Id.* at 432–33. Bunkley makes no attempt to do so, stating only that his attorney "could have made objections." Appellant Br. 23. This bald assertion is insufficient. *Rossi*, 422 F. App'x at 433–34. Bunkley is thus unable to show that he was unfairly surprised or prejudiced, so he is not entitled to relief on this ground. *Id.*

*Undisclosed Evidence.* Third, Bunkley claims that the district court relied on undisclosed evidence when it mentioned that there was an opioid epidemic in Ohio and that hundreds of people had died from drug overdoses in the past year. Because neither fact was included in the

presence report, Bunkley suggests the district court ran afoul of this court's decision in *United States v. Hayes*, 171 F.3d 389 (6th Cir. 1999). In *Hayes*, we held that the district court erred when it increased the defendant's sentence based on victim impact letters that it never shared with the defendant. *Id.* at 391–92. Here, however, the district court did not rely on information that was unknown to Bunkley. Rather, the court relied on publicly available information to emphasize that Bunkley's offenses were serious and posed a danger to the community. *See United States v. Harris*, 585 F. App'x 893, 894–95 (6th Cir. 2014) (per curiam) (explaining that *Hayes* does not prohibit district courts from considering publicly available statistics). Since courts routinely discuss societal conditions in this way, the district court did not err. *See, e.g.*, *Ford*, 2018 WL 1037417, at *4. Moreover, even if this routine practice was error, Bunkley has not explained how he could have effectively rebutted the district court's assertions if they had been included in the presentence report—which is a prerequisite for relief under plain-error review. *United States v. Meeker*, 411 F.3d 736, 742 (6th Cir. 2005). So this ground is also insufficient to warrant relief.

*Relevant Conduct.* Finally, Bunkley argues that Petrello's death and the harm he may have caused in the community are not "relevant conduct" for purposes of sentencing. But the cases he relies on for this proposition are about what constitutes relevant conduct when calculating a defendant's base offense level under the Guidelines. *See, e.g., United States v. Cross*, 121 F.3d 234, 238–39 (6th Cir. 1997). Here, the district court did not consider these factors when calculating Bunkley's base offense level—it used them as a basis to vary upwards. And for the reasons stated above, it was permissible for the district court to do so.

In sum, none of Bunkley's arguments demonstrates that the district court committed a plain error that affected his substantial rights when it considered Petrello's death and the harm Bunkley caused to the community.

### III.

Bunkley next argues that the district court misunderstood the statutory maximum for one of his drug-trafficking counts and that this misunderstanding affected the court's decision to vary above the Guidelines. The record, however, demonstrates otherwise.

At the outset of the sentencing hearing, the district court announced the statutory penalties for each of the counts in Bunkley's plea agreement. When it did so, it misstated the statutory term for Count II. Instead of explaining that the count had a statutory maximum of thirty years, the judge said it carried a term of thirty years to life. This statement was plainly incorrect. But the district court went on to state the correct statutory maximum twice more before sentencing Bunkley. And out of an abundance of caution, the government brought the court's initial misstatement to the judge's attention at the end of the hearing. The judge immediately apologized for misspeaking, explained that he understood that Count II carried a term of *up to* thirty years, and re-announced Bunkley's sentence to clear up the record.

All in all, the district court thoroughly corrected its momentary error—*four* times to be exact. This is enough to show that it understood Count II's statutory penalty when crafting Bunkley's sentence. *See United States v. Johnson*, 302 F. App'x 453, 457 (6th Cir. 2008) (finding no error where district court acknowledged its initial misstatement of the Guidelines range and demonstrated its understanding on how to properly apply the Guidelines range going forward). Moreover, if there was any lingering doubt, the court's discussion of the section 3553(a) factors further confirms that it understood the applicable range. Had the district court

believed, as Bunkley contends, that Count II carried a statutory *minimum* of thirty years, its lengthy explanation justifying an upward variance to thirty years would have been a curious waste of time. *See* U.S. Sentencing Guidelines Manual § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

The sentencing transcript as a whole shows that the district court and the parties understood Count II's statutory penalty and that the court's initial misstatement did not affect Bunkley's substantial rights.[1] This argument thus fails under plain-error review.

IV.

Finally, Bunkley argues that the district court did not adequately explain its reasons for imposing lifetime supervised release. On this point, he is correct. After announcing Bunkley's custodial sentence, the district court stated that supervised release would be for life. The reason? "[T]his defendant has proven that he needs to be supervised." R. 40, Pg. ID 168. This explanation falls short of what the law requires.

District courts must explain their reasons for ordering lifetime supervised release. *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012) (per curiam). Often, those reasons will overlap with the factors that support the defendant's custodial sentence. 18 U.S.C. § 3583(c) (instructing district courts to consider most of the section 3553(a) factors when deciding term of supervised release). Of course, the district court does not need to go through those factors twice, but it must provide at least *some* explanation about why the factors justify the term of supervised release it imposes. *United States v. Giganti¸* 405 F. App'x 31, 40 (6th Cir. 2010); *see also*

---

[1] Bunkley also seems to suggest that he was confused because the district court failed to recount the elements of each of his charges. But he has cited no authority suggesting that a district court is required to do so in a sentencing hearing. Moreover, Bunkley cannot credibly claim that he did not know the elements of the offenses to which he pled guilty, as those elements were listed in his plea agreement.

*United States v. Emmons*, 524 F. App'x 995, 1000 (6th Cir. 2013) (per curiam).  Failing to do so warrants reversal, even under plain-error review.  *United States v. Thompson*, 509 F. App'x 449, 453 (6th Cir. 2012).

Accordingly, we vacate Bunkley's sentence with respect to supervised release and remand so the district court can provide a more thorough explanation of its reasons.  *See Inman*, 666 F.3d at 1004, 1007.  Bunkley's other arguments about the district court's discussion of supervised release—namely, the court's alleged failure to explain the mandatory and maximum terms for each count—can also be addressed on remand.

\*      \*      \*

For these reasons, we **AFFIRM** the district court's judgment imposing a thirty-year sentence, **VACATE** the judgment imposing supervised release, and **REMAND** for further proceedings consistent with this opinion.