NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0117n.06

Case No. 18-1708

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Feb 24, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JACKLYN WILSON, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

_____/

Before: GUY, BUSH, and MURPHY, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge**. A jury convicted defendant Jacklyn Wilson of multiple controlled-substance offenses. At sentencing, she requested a mitigating role reduction, but the court denied her request. She now appeals solely on the ground that she was entitled to the reduction. We affirm.

I.

Jacklyn Wilson became involved in a drug-distribution conspiracy led by her son. The conspiracy involved transporting heroin and cocaine from Michigan's Lower Peninsula to its Upper Peninsula and selling it there. Conspirators drove the drugs up in cars and they had a method to avoid detection in case the police pulled them over. One or two women would travel as passengers with the drugs concealed in their vaginal cavities. Once they arrived in the Upper

Peninsula, they removed the drugs and handed them over to sellers. When the women returned to the Lower Peninsula to pick up more drugs, they often carried the previous cash proceeds with them. Wilson was one of those women and she made several of these trips.

Prior to sentencing, the presentence report had recommended Wilson receive an enhancement for being a manager or supervisor in the conspiracy, per § 3B1.1(b) of the Sentencing Guidelines. Wilson's attorney objected in a letter to the probation officer, explaining that Wilson was merely "a mule who transported drugs in order to feed her own substantial drug habit," and pointed out that "[n]o witness testified that Ms. Wilson led, managed or supervised them." He went on to explain that rather than an enhancement, Wilson's relatively "minor or minimal role" entitled her to a reduction under § 3B1.2. He explained, "[t]here is no indication that Ms. Wilson understood the scope and structure of [her son's] activities, she did not participate in planning or organizing any criminal activity, she did not have a proprietary interest in the criminal activity, she was 'simply being paid to perform certain tasks'."

At sentencing, Wilson's attorney raised the objections, starting with the challenge to the enhancement. After hearing from both sides, the court sustained Wilson's objection and declined to apply the enhancement. The court then attempted to move on, stating "[A]nd that's the only objection? All right." Wilson's attorney immediately interposed, pointing out that he had a second objection: that Wilson should receive a reduction. The court then overruled the objection with the following explanation:

> No, I'm going to deny that minimal role adjustment. In no way. She was in this conspiracy up to her eyeballs. She really -- she made a large number of trips delivering cocaine and heroin to the Upper Peninsula. She transferred money and drugs for the conspiracy, summarized in paragraph 159 of the presentence report, which was not objected to, and that summary is supported by the other undisputed facts set forth in the presentence report, and she was, like I said, very, very involved. I think she had some kind of leadership role, some trips from time to time, but not to the extent that she should get an aggravating role adjustment.

Nothing more was said on the matter. The court explained its intention to sentence Wilson to 70 months of imprisonment and asked if there were any objections before the sentence was finally imposed. Both parties said no, and the court imposed the sentence. Now on appeal, Wilson argues that the district court erred by not applying the reduction.

II.

We start with the text of the guideline Wilson claims was applicable. Section 3B1.2 of the Sentencing Guidelines directs a sentencing court to decrease the offense level if the defendant played a mitigating role in the criminal activity. If the defendant was a "minimal participant" then the offense level should be decreased by four. USSG § 3B1.2(a). If she was a "minor participant" then it should decrease by two. *Id.* § 3B1.2(b). In cases "falling between" those two categories, the level should be decreased by three. *Id.* § 3B1.2. Wilson contends she was a "minor participant" entitled to the two-level reduction.[1]

The commentary of a particular guideline is binding if the text of the guideline will bear that construction. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019). Wilson directs us to the commentary for § 3B1.2 to understand what "minor participant" means and suggests we begin with what the commentary *used* to say.

Prior to November 2015, the commentary read:

> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent on the facts of the particular case.

---

[1] When the presentence report recommended the enhancement, Wilson's written objection asserted that she deserved the two-level reduction. Her subsequent sentencing memorandum to the court suggested that she should receive a four-level reduction for being a "minimal participant," but did not explain why she deserved this reduction rather than that of a "minor participant." At sentencing, her attorney described it as "minor or minimal," thus including either option. When the district court denied her request, it stated that it was "deny[ing] that minimal role adjustment."

USSG § 3B1.2, cmt. n.3(C) (2014). Beginning November 1, 2015, Amendment 794 added the following additional guidance:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)      the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)     the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)     the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

USSG § 3B1.2, cmt. n.3(C) (2015).

The Sentencing Commission explained the reason for the change. According to the Commission, courts had been applying the reduction inconsistently to otherwise comparable defendants. *See* USSG App. C, amend. 794, at 115 (Suppl. 2016). "For example, application of mitigating role varie[d] along the southwest border, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another." *Id.*

Circuits had also split on whom a defendant should be compared to. Before Amendment 794, application note 3(A) had explained that the mitigating-role adjustment was for "a defendant

- 4 -

who plays a part in committing the offense that makes him substantially less culpable than the average participant." USSG § 3B1.2, cmt. n.3(A) (2014). Some circuits held that "the average participant" was in reference to "the universe of persons participating in similar crimes" while others took the narrower view that it referred to "those persons who actually participated in the criminal activity at issue in the defendant's case." USSG App. C, amend. 794, at 115 (Suppl. 2016). The Commission intended Amendment 794 to clarify that the latter was the appropriate comparison. *Id.* at 115–16. It therefore changed note 3(A) to read, "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant *in the criminal activity.*" USSG § 3B1.2, cmt. n.3(A) (2015) (emphasis added to denote the new language).

With that background in mind, we return to Wilson's sentencing. She asserts that the district court did not consider the five non-exhaustive factors recommended by Amendment 794. According to Wilson, the court's only stated reasons for not applying the reduction were that she had "made a large number of trips," had transferred both money and drugs for the conspiracy, and "had some kind of leadership role." And as Wilson points out, at least one court—prior to Amendment 794—concluded that "a criminal participant that commits a minor act is not necessarily precluded from minor role consideration simply because the minor act is repeated." *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011).

The government's response is twofold. First, it notes that the district court is presumed to know and apply the law at sentencing, and the government asserts that the district court "discussed several of the factors on the record." Second, even if the court erred, the government claims that Wilson cannot show that her substantial rights were affected because the factors weigh against her receiving the reduction.

To begin, we do not agree with the government that the district court truly discussed the factors, but that is not surprising—neither party brought them up in their briefs or during the hearing.[2]  We do presume that the sentencing court knows and applies the law at sentencing, but we review a court's expressed reasons for imposing a sentence.  *See United States v. Petrus*, 588 F.3d 347, 352–53 (6th Cir. 2009).  Here, the court expressed its reasoning on the record and essentially stated three reasons for denying the reduction: (1) Wilson made several trips, (2) she transported both money and drugs, and (3) she had "some kind of leadership role."  We must therefore ask: did these reasons satisfy the considerations commanded by Amendment 794?  We conclude that they did not.

Recall that a defendant's a role in committing the offense should be compared with "the average participant in the criminal activity."  USSG § 3B1.2, cmt. n.3(A) (2015); *see also* USSG App. C, amend. 794, at 116 (Suppl. 2016) ("the court must assess the defendant's culpability relative to the average participant in the offense").  Indeed, comparing the defendant to other participants is the crux of the mitigation-role reduction.  The guideline is not even applicable "unless more than one participant was involved in the offense," and therefore "an adjustment under [§ 3B1.2] may not apply to a defendant who is the only defendant convicted of an offense unless that offense involved other participants in addition to the defendant and the defendant otherwise qualifies for such an adjustment."  USSG § 3B1.2, cmt. n.1 (2016).  And the commentary specifically defines a "minor participant" as "a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."  *Id.* § 3B1.2, cmt. n.5 (2016).

---

[2] We note, however, that Wilson's attorney's letter to the probation officer raising the initial objection did track the five factors, and explicitly cited the commentary note which she now contends the attorney ignored.

The only portion of the court's reasoning that arguably compared Wilson to other participants was its reference to her having "some kind of leadership role." The court did not explain the basis for that conclusion, but an earlier discussion in the hearing sheds some light. The court had explained why it rejected the probation officer's recommendation that Wilson receive a three-level "aggravating role" adjustment for being a "manager or supervisor." Two witnesses, Anthony Brown and Corrie Ruth, had testified during trial that Wilson called them about making some money and gave them her son's phone number. The judge had presided over the trial and concluded that these interactions did not amount to "recruiting" so it declined to impose the adjustment. When the court declined to apply the mitigation-role reduction, it reasoned that "I think she had some kind of leadership role, some trips from time to time, but not to the extent that she should get an aggravating role adjustment."

Whether Wilson played a leadership role of any kind, however, does not answer whether she was substantially less culpable than the average participant in the criminal activity. The average participant may have been a leader. Section 3B1.2 is about comparisons. The district court therefore erred when it denied Wilson's request for a reduction without comparing her to others.

What to do about that error depends on our standard of review. Although Wilson's sentencing memorandum asserted that she was "substantially less culpable than other members of the alleged conspiracy," she concedes that the memorandum failed to list §3B1.2's factors and relied on pre-amendment decisions. And according to Wilson, her trial counsel "did no better" at sentencing when he raised largely irrelevant factors. When district court gave its reasons for not applying the reduction, it did not discuss the relevant factors, but when the court asked if there were any objections before it imposed the sentence, Wilson's attorney had none. In light of all

that, the government asserts that Wilson's arguments on appeal are new and suggests that plain-error review should apply. *Cf. United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) ("sentencing arguments raised for the first time on appeal are reviewed under the plain-error standard . . . ."). And in her reply, Wilson concedes that her course of conduct at the district court results in plain-error review now. That is the standard we will apply.

Demonstrating plain error is demanding. Wilson must show four things: (1) an error occurred; (2) the error was obvious or clear; (3) the error affected her substantial rights; and (4) its impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Dubrule*, 822 F.3d 866, 882 (6th Cir. 2016). We conclude that the first two were met: there was error and it was clear. So we next ask whether the error affected her substantial rights.

The government argues that Wilson's substantial rights were not affected because she cannot show that there is a reasonable probability that, but for the error, she would have received a more favorable sentence. *See United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). According to the government, even if the district court had gone through the five factors, the outcome would have been the same because most factors do not favor her. And even if they all favored her, the district court could have found that she had not carried her burden to show she was *substantially* less culpable than the average participant.

The government relies on our decision in *United States v. Romero*, 704 F. App'x 445 (6th Cir. 2017). There, the defendant was one of three men who accompanied a drug trafficker on deliveries. *Id.* at 446–47. The district court found that four of the five factors weighed in favor of the defendant: he had not planned the scheme, he did not understand its true scope, he did not exercise decision-making authority, and he received only a flat rate for his service. *Id.* at 450.

Critically, though, "the same could have been said for the other two" men who accompanied the trafficker. *Id.* "In effect, the factors revealed that [the defendant] was less culpable than [his boss]. But what they did not show, and what [the defendant] was required to establish, was that he was substantially less culpable than the average participant." *Id.*

We affirmed in *Romero*, on clear-error review, because the district court properly compared the defendant to other participants. We affirm here, on plain-error review, because although the district court did not perform the proper comparison, it was not up to the district court to devise ways Wilson should be compared to other participants. That was her job. *See United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001) ("The defendant, as the proponent of the downward adjustment, bears the burden of proving a mitigating role in the offense by a preponderance of the evidence.") Now on appeal, Wilson must show that "she is, in fact, entitled to the reduction, resulting in a lower Guidelines range." *United States v. Ednie*, 707 F. App'x 366, 372 (6th Cir. 2017). Wilson has not explained why she was, in fact, less culpable than the average participant, nor even described the role that the average participant played. By not doing so, she has failed to show plain error.

The judgment of the district court is AFFIRMED.

**JOHN K. BUSH, Circuit Judge, concurring**. I agree with the majority that plain-error review applies because Wilson failed to object to the sufficiency of the district court's reasoning at the sentencing hearing, and I agree that Wilson loses under that standard. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (applying plain-error review because while Vonner previously raised objections to his sentence, he did not object to the adequacy of the court's explanation at the sentencing hearing); *see also United States v. Hatcher*, 947 F.3d 383, 389 (6th Cir. 2020) (applying plain-error review where the defendant had objected "to the court's upward variance," but never objected to "any specific procedural deficiencies at the sentencing hearing.").

I write separately to note my disagreement with the majority's reliance on Wilson's concession in her reply brief that plain-error review applies. Our general rule is that this court, not the parties, determines the standard of review. *See, e.g.*, *Moore v. Mitchell*, 708 F.3d 760, 782 (6th Cir. 2013) (citation omitted) ("[I]t is well established that parties may not stipulate to a standard of review."); *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 712 n.10 (6th Cir. 2006) (citation omitted) ("Of course, the parties may not stipulate to the standard of review."); *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996) ("The parties . . . cannot determine this court's standard of review by agreement. Such a determination remains for this court to make for itself.").

Other circuits also follow this general rule. *See Ross v. Early*, 746 F.3d 546, 565 n.2 (4th Cir. 2014) (alteration in original) (quoting *Sanford's Estate v. Comm'r Internal Revenue*, 308 U.S. 39, 51 (1939)) ("[E]ven if the parties attempted to stipulate to the standard of review, it should go without saying that '[w]e are not bound to accept, as controlling, stipulations as to questions of law.'"); *United States v. Whitworth*, 602 F. App'x 208, 208 (5th Cir. 2015) (per curiam) (citing *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc) ("Although the parties

agree plain-error review applies, the court, not the parties, determines the appropriate standard of review.")); *Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001) ("[T]he court, not the parties, must determine the standard of review, and therefore, it cannot be waived."); *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind us to application of an incorrect legal standard.").

We have carved out an exception to this general rule, applying a less-deferential standard of review in cases where the government waives plain-error review. *See United States v. Williams*, 641 F.3d 758, 763–64 (6th Cir. 2011); *United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010).[1] Though we have never given an in-depth explanation as to why we created this exception, we "apparently hang our hat on the theory that the court of appeals can assume a party preserved an issue below if his opponent does not say otherwise." *Williams*, 641 F.3d at 771 (Thapar, J., concurring) (citing *United States v. Fuller*, 77 F. App'x 371, 380 n.9 (6th Cir. 2003)).

But we should not extend the exception to allow criminal defendants to stipulate to a less-favorable standard of review. In cases where the government waives plain-error review, there are two waivers at issue. The first waiver comes from the criminal defendant by failing to preserve an issue below. The second waiver comes from the government by failing to argue for plain-error review on appeal. The government may be able to waive plain-error review because it is actually waiving an argument about the *defendant's* waiver; and "[a] waiver argument, after all, can be waived by the party it would help." *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004); *see also United States v. Murphy*, 406 F.3d 857, 860 (7th Cir. 2005) (citation omitted) (holding that the government "waived waiver" by stipulating to a standard of review). By contrast, in cases

---

[1] At least two other circuits, albeit with little or no explanation, have carved out the same exception. *See United States v. Tapia-Escalera*, 356 F.3d 181, 183 (1st Cir. 2004); *United States v. Leichtnam*, 948 F.2d 370, 375 (7th Cir. 1991).

where the defendant stipulates to a less-favorable standard of review, there is usually only one attempted waiver at issue—the defendant erroneously concedes on appeal that plain-error review applies. Even if a party may be able to waive a waiver argument, the general rule, and the rule we should adhere to today, is that parties cannot stipulate to a standard of review. *K & T Enterprises, Inc.*, 97 F.3d at 175.

It appears that the only circuit to have addressed the issue has held that a criminal defendant cannot stipulate to plain-error review by conceding that she failed to preserve an issue below. *See United States v. Whitworth*, 602 F. App'x 208, 208 (5th Cir. 2015) (per curiam) (holding that a defendant cannot stipulate to plain-error review). I see no reason to create a circuit split.

For these reasons, I respectfully concur.