NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0208n.06

Case No. 24-3265

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 18, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| MIGDALIA MATOS ESTRELLA, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: COLE, McKEAGUE, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** The district court denied Migdalia Matos Estrella's request for a mitigating-role adjustment under the sentencing guidelines. She appeals. Because the district court committed no clear error, we affirm.

## BACKGROUND

Matos Estrella was involved in a drug-trafficking scheme with her two sons and at least eight other coconspirators. Her codefendant Kevin Manuel Santiago lived in Puerto Rico and shipped various quantities of cocaine via the U.S. Postal Service to Cleveland, Ohio. Hector Garcia Matos, Matos Estrella's son, provided Santiago with addresses for the cocaine shipments; one of the addresses belonged to Matos Estrella. Throughout 2019, Santiago sent a total of twenty-two cocaine shipments to Cleveland. Nine of them were sent to Matos Estrella's residence under fictitious names. She also held money for the conspiracy.

Wiretapped telephone conversations between Matos Estrella and her codefendants on November 18, 2019, demonstrated that she knew cocaine was inside the packages delivered to her

address that day. To illustrate, Roberto Ortiz Cruz called Matos Estrella, informing her that a shipment of cocaine would arrive at her house, and instructing her to contact her son Garcia Matos for further instructions. Matos Estrella then called her son and told him that Ortiz Cruz asked her to tell him "the number two"—meaning that two cocaine parcels would be delivered. After she received and opened the cocaine packages, Matos Estrella called her son again, telling him that she received "two boxes of shoes"—drug code for two parcels each containing two kilograms of cocaine.

Two days later, Matos Estrella and her son spoke again. They talked about her getting paid for receiving the cocaine parcels and holding money and cocaine for her son. Matos Estrella also said that her husband was upset with her for not letting him sample the cocaine. Garcia Matos explained to her that potential customers did not like opened parcels of cocaine.

The United States charged Matos Estrella with conspiring to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). She was also charged with using a communication device in furtherance of drug trafficking, in violation of 21 U.S.C. § 843(b). Matos Estrella pled guilty to all the charges without a written plea agreement.

At sentencing, the court held Matos Estrella responsible for the four kilograms of cocaine that she received on November 18, 2019. The court focused on the fact that she knew the packages delivered that day contained cocaine. Matos Estrella requested a four-level mitigating-role adjustment under U.S.S.G. § 3B1.2, arguing that "her son . . . br[ought] her into this conspiracy," which "[s]he didn't plan . . . [or] organize," and that she "never had any knowledge [of] the scope or the nature" of the drug-trafficking scheme. The court denied that request. Ultimately, the court settled on a total offense level of twenty-one and a criminal-history category of I, resulting in a

sentencing-guidelines range of thirty-seven to forty-six months. The court imposed a below-guidelines sentence of thirty-one months in prison.

Matos Estrella appeals that sentence.

## ANALYSIS

Matos Estrella argues that the district court erred in denying her request for a mitigating-role adjustment under § 3B1.2. Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes [her] substantially less culpable than the average participant in the criminal activity." *Id.*, cmt. n.3(A). A defendant is entitled to a four-level decrease of her offense level if she was a "minimal" participant in the criminal activity, and a two-level decrease if she was a "minor" participant. U.S.S.G. § 3B1.2. Cases falling between these two categories receive a three-level decrease. *Id.*

The relevant commentary to the sentencing guidelines provides a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating-role adjustment and, if so, the amount of the adjustment. *Id.*, cmt. n.3(C). Those factors are:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* The defendant bears the burden of demonstrating she is entitled to a mitigating-role adjustment by a preponderance of the evidence. *United States v. Guerrero*, 76 F.4th 519, 533 (6th Cir. 2023) (citing *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995)).

We review denials of § 3B1.2 adjustments for clear error. *Id.* (citing *United States v. Daneshvar*, 925 F.3d 766, 790 (6th Cir. 2019)). "The deferential clear-error standard requires us to defer to the district court's finding about what transpired 'even if we would have made [the] opposite finding,' so long as both stories are plausible on the record as a whole." *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022) (alteration in original) (quoting *United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021)).

Under this deferential standard, we cannot say that the district court erred in denying Matos Estrella's request for a mitigating-role adjustment. Matos Estrella primarily argues that the district court failed to properly weigh the relevant factors. According to Matos Estrella, a proper consideration of those factors would have shown she was a "minimal" participant in the conspiracy, because the "only [factor]" applicable to her is "that she received some money . . . from her son," CA6 R.24, Appellant Br., at 9-10—that is, that she "stood to benefit from the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C)(v). She argues that the majority of the factors weigh in her favor.

This argument, however, lacks support in the law and the record. For starters, a district court does not commit reversible error by neglecting to explicitly reference and apply each factor. We "presume that the sentencing court knows and applies the law at sentencing" and therefore "review a court's expressed reasons for imposing a sentence." *United States v. Wilson*, 802 F. App'x 976, 979-80 (6th Cir. 2020) (citing *United States v. Petrus*, 588 F.3d 347, 352-53 (6th Cir. 2009)); *see also United States v. Bragg*, 762 F. App'x 298, 301-03 (6th Cir. 2019) (per curiam) (affirming denial of mitigating-role adjustment even though district court did not walk through an explicit factor-by-factor analysis). Nor does the fact that "fewer than most of the factors weighing toward denial [necessarily] require granting the adjustment." *United States v. Taylor*,

818 F. App'x 495, 503 (6th Cir. 2020) (citing *United States v. Romero*, 704 F. App'x 445, 450 (6th Cir. 2017)).

And from a factual standpoint, the record does not support Matos Estrella's contention that the majority of the factors weigh in her favor. In denying Matos Estrella's request for a mitigating-role adjustment, the court properly rejected her assertion that she had a limited understanding of the drug conspiracy. U.S.S.G. § 3B1.2 cmt. n.3(C)(i). Matos Estrella used drug code during wiretapped conversations with her son. The district court also referenced a conversation in which her son explained to her why her husband could not sample the cocaine, at "[which] point she kn[ew] what[ was] coming to the house." RE 323, Sent'g Tr., PageID 1783. The court found these facts "very, very, compelling" in showing that Matos Estrella "kn[ew] exactly how this drug trafficking [wa]s taking place." *Id.* at PageID 1791.

Moreover, the court highlighted the extent of Matos Estrella's involvement in the drug conspiracy. U.S.S.G. § 3B1.2 cmt. n.3(C)(iv). The court underscored the fact that Matos Estrella played "multiple roles . . . including accepting . . . numerous packages . . . [and] holding money and cocaine for her son." RE 323, Sent'g Tr., PageID 1790-91. Under these facts, Matos Estrella was not only "a willing participant" but also "an integral part of this [conspiracy]." *Id.* at PageID 1802. And again, Matos Estrella stood to benefit from the criminal activity, U.S.S.G. § 3B1.2 cmt. n.3(C)(v), because "she did receive some money from her son . . . to have the drugs sent to her house." *Id.* at PageID 1789. Thus, the majority of the factors support the district court's denial of a mitigating-role adjustment.

Matos Estrella asserts that she did not plan or organize the drug-trafficking scheme. U.S.S.G. § 3B1.2 cmt. n.3(C)(ii). She also implies that she exercised no decision-making authority. *Id.*, cmt. n.3(C)(iii). Even if these assertions were true, "[a] defendant does not qualify

for a mitigating role reduction merely because someone else planned the scheme and made all the arrangements." *United States v. Sheafe*, 69 F. App'x 268, 270 (6th Cir. 2003) (citing *Miller*, 56 F.3d at 720); *Guerrero*, 76 F.4th at 534 ("[M]erely having less authority than some other persons in an operation does not mandate a role reduction." (citing *United States v. Macias Martinez*, 797 F. App'x 974, 981 (6th Cir. 2020))).

Analysis of the individual factors aside, Matos Estrella must ultimately prove that "h[er] role in committing the criminal offense was such that [s]he [wa]s 'substantially less culpable than the average participant' in the crime." *Guerrero*, 76 F.4th at 533 (quoting *United States v. Bucio*, 857 F. App'x 217, 221 (6th Cir. 2021)); *see* U.S.S.G. § 3B1.2 cmt. n.3(A). We have clarified that "average participant" must be measured in reference to "those persons who actually participated in the criminal activity at issue in the defendant's case" rather than "the universe of persons participating in similar crimes." *United States v. Wilson*, 802 F. App'x 976, 979 (6th Cir. 2020) (quoting U.S.S.G. App. C, amend. 794, at 115 (Suppl. 2016)); *see also United States v. Mosley*, 53 F.4th 947, 963 (6th Cir. 2022) (affirming denial of mitigating-role adjustment where defendant was not substantially less culpable "than [his] other coconspirators"); *United States v. Romero*, 704 F. App'x 445, 451 (6th Cir. 2017) (same).

The district court here conducted a proper comparison. The court noted that Matos Estrella "h[eld] [both] money and cocaine for her son" whereas "some codefendants only accepted packages." RE 323, Sent'g Tr., PageID 1791. The court also mentioned that Matos Estrella accepted "numerous packages, as outlined [i]n . . . the presentence investigation report." *Id.* That report showed that nine out of the twenty-two packages—that is, nearly half—were shipped to Matos Estrella's address, rendering it the most frequently used site for the delivery of cocaine as compared to any other codefendant's address. Under these facts, the court reasonably concluded

that Matos Estrella was "not substantially less culpable than the average participant" in the conspiracy. *Id.*

Matos Estrella advances two additional arguments, but neither is convincing. First, she argues that the district court erred in denying her request "without defining what constitutes the average participant of the conspiracy for a point of reference." CA6 R. 24, Appellant Br., at 11. But as shown, the court explained what constituted an average participant in this case: codefendants who received packages but not money and/or who accepted fewer cocaine shipments than did Matos Estrella. And it does not matter that Matos Estrella received the fourth lowest sentence among the eleven codefendants. "[A]pplication note 3(A) to section 3B1.2 requires the court to compare a defendant's role in the conspiracy to that of the average participant, not to compare their sentences." *United States v. Miller*, 562 F. App'x 272, 306 (6th Cir. 2014).

Second, Matos Estrella argues that the district court erred by "fail[ing] to rule as to why [she] would not qualify as a minor participant, or hybrid between minimal and minor," even if she was not a minimal participant. CA6 R. 24, Appellant Br., at 12. But the record shows no error on the part of the district court. After concluding that Matos Estrella was not substantially less culpable than the average participant in the conspiracy—a precondition for any level of mitigating-role adjustment, *Guerrero*, 76 F.4th at 533—the court justifiably denied "any downward adjustment for *any* role, minimal role or minor role[.]" RE 323, Sent'g Tr., PageID 1792 (emphasis added).

## CONCLUSION

For these reasons, we affirm.